UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          :          CRIM. NO. 3:CR-19- *09*

           v.                                 :

                              :          (Judge          )

BRUCE EVANS, SR., and          :
BRUCE EVANS, JR.,          :
               Defendants          :

## I N D I C T M E N T

### Introduction

FILED
SCRANTON
JAN 08 2019
PER _____
DEPUTY CLERK

At times material to this Indictment:

1.     The defendant, Bruce EVANS, SR. (EVANS SR.), resided in Greenfield Township, Pennsylvania.

2.     Defendant EVANS SR. was a Greenfield Township Supervisor, a Greenfield Township Sewer Authority Board Member, and Manager of the Greenfield Township Sewer Authority (GTSA). Defendant EVANS SR. was an employee of both Greenfield Township and the GTSA.   Defendant EVANS SR. currently serves as a Greenfield Township Supervisor.

1

3.    Defendant EVANS SR. was not certified by the Pennsylvania Department of Environmental Protection (PADEP) as a wastewater operator.

4.    The defendant, Bruce EVANS, JR. (EVANS JR.), resided in Greenfield Township, Pennsylvania.

5.    Defendant EVANS JR., the son of defendant EVANS SR., submitted a notarized application to PADEP for certification as a wastewater treatment plant operator on or about June 29, 2017. PADEP certified defendant EVANS JR. as a wastewater operator on or about August 17, 2017.   Defendant EVANS JR, was an employee of both Greenfield Township and the GTSA and performed different duties for each employer.

6.    Defendant EVANS SR. sent defendant EVANS JR.'s wastewater operator certificate to PADEP on September 26, 2017.

## THE CLEAN WATER ACT

7.    The Clean Water Act ("CWA"), 33 U.S.C. § 1251, et seq., is the Nation's comprehensive water pollution control statute.   The purpose of the CWA is to restore and maintain the chemical, physical,

2

and biological integrity of the Nation's water.   In addition, the CWA

was enacted to prevent, reduce, and eliminate water pollution in the

United States and to conserve the waters of the United States for the

protection and propagation of fish and aquatic life and wildlife,

recreational purposes, and for the use of such waters for public drinking

water, agricultural, and industrial purposes.   33 U.S.C. § 1252(a).

8.    Title 33, United States Code, Section 1311 of the CWA,

prohibits the discharge of any pollutant by any person, except in

compliance with provisions of the CWA, including 33 U.S.C. § 1342.

9.    The CWA defines a "person" as an individual and a

corporation, 33 U.S.C. § 1362(5), and "any responsible corporate officer,"

33 U.S.C. § 1319(c)(6); "discharge of a pollutant" as any addition of any

pollutant to navigable waters from any point source, 33 U.S.C. §

1362(12); "pollutant" as, among other things, solid waste, sewage,

sewage sludge, chemical wastes, and industrial and agricultural waste

discharged into water, 33 U.S.C. § 1362(6); "navigable waters" as

waters of the United States, 33 U.S.C. § 1362(7); and "point source" as

any discernible, confined, and discrete conveyance from which

pollutants are discharged, including any pipe, ditch, channel, conduit,

and discrete fissure, 33 U.S.C. § 1362(14).

10.    Title 33, United States Code, Section 1342 of the CWA
authorizes the discharge of pollutants in compliance with a permit
issued under the National Pollution Discharge Elimination Systems
("NPDES") by the U.S. Environmental Protection Agency ("EPA") or a
federally authorized state agency, including the Pennsylvania
Department of Environmental Protection ("PADEP").

11.    NPDES permits authorize the discharge of pollutants into
surface waters under specified conditions, and impose limits on the type
and amount of pollutants that can be discharged into the waters of the
United States.   33 U.S.C. § 1311(a) and 1342.

12.    NPDES permits are specific to each treatment facility.
They contain general operating and maintenance requirements and
numerical pollution limitations.   The numerical limits are based on,
among other things, the nature of the pollutants being treated, volume,
treatment capacity, and the nature of the receiving waterway.   The
NPDES permits require permit holders to participate in a self-
monitoring program where they must collect samples prior to
discharging waste water into a receiving water, and to conduct analysis

4

on the effluent (liquid waste or sewage) produced by the permitted facility.   These permits contain both daily and weekly monitoring requirements.   The permit program is based on self-monitoring by the permittee.   Any failure with respect to self-monitoring affects the integrity of the regulatory program and can potentially affect human health and the environment.

## GREENFIELD TOWNSHIP SEWER AUTHORITY

13.    Greenfield Township is a township located in Lackawanna County, Pennsylvania.   The Greenfield Township Sewer Authority (GTSA) owns and operates a publicly owned treatment works ("POTW") that is subject to the terms of and conditions of an NPDES permit, effective May 1, 2009 and expiring April 30, 2014.   Prior to expiration of the permit, the GTSA initiated the process for renewal of the NPDES permit.   Pursuant to Paragraph 3 of the permit's Introduction, page one, all terms and conditions of the May 1, 2009 NPDES permit held by the GTSA remain in effect throughout the renewal process.

14.    Under the CWA's NPDES permit program, PADEP issued NPDES Permit No. PA 0061671 TO GTSA, authorizing the GTSA to

5

discharge pollutants from its treatment facility located in Greenfield Township, Lackawanna County, Pennsylvania, to an unnamed tributary of Dundaff Creek in Watershed 4-F, in accordance with effluent limitations, monitoring requirements, and other conditions set forth in the GTSA permit, and in compliance with federal and state laws and regulations.

15.    Dundaff Creek flows into the Tunkhannock Creek, which then flows into the Susquehanna River, a navigable waterway of the United States.   These waterways are waters of the United States as defined by the Clean Water Act.

16.    The GTSA permit required that GTSA at all times maintain in good working order, and properly operate and maintain all facilities and systems, which were installed and used by the permittee to achieve compliance with the terms and conditions of the GTSA permit.   The GTSA is the permittee of NPDES Permit No. PA 0061671.   As manager of the GTSA, defendant EVANS SR. was responsible for ensuring GTSA's compliance with the NPDES permit and was the authorized recipient and signatory for most communications to and from PADEP, including all notices of violations.

6

17.   NPDES Permit PA 0061671, Part C, Special Condition Six,
provides that collected screenings, slurries, sludges, and other solids
shall be handled and disposed of in compliance with 25 Pa. Code,
Chapters 75, and in a manner equivalent to the requirements indicated
in Chapters 271, 273, 275, 283, and 285 (related to permits and
requirements for landfilling, land application, incinerations, and
storage of sewage sludge), Federal Regulation 40 C.F.R. 257,
Pennsylvania Clean Streams Law, Pennsylvania Solid Waste
Management Act of 1980, and the Federal Clean Water Act and its
amendments.

18.   NPDES Permit PA 0061671 Section A.C.1. provides, in
relevant part, the discharger may not discharge floating materials, oil,
grease, scum, foam, sheen and substance which produce color, taste
turbidity or settle to form deposits in concentration or amounts
sufficient to be, or creating danger of being, inimical to the water uses
to be protected or to human, animal, plant or aquatic life.

19.   NPDES Permit PA 0061671 Section B.D.2. provides, in
relevant part, the permittee shall at all times properly operate and
maintain all facilities and systems of treatment and control (and related

appurtenances) which are installed or used by the permittee to achieve compliance with the terms and conditions of this permit.

20.    On April 24, 2013, the PADEP conducted a routine inspection of the GTSA waste treatment plant facility.   PADEP personnel encountered defendant EVANS SR. pumping the contents of the chlorine contact tank, including solids and sewage sludge, onto the ground and into the grass.   The chlorine contact tank provides disinfection of wastewater prior to its discharge into the unnamed tributary of Dundaff Creek.

21.    Pumping of the solids and sludge onto the ground violated the permit, Part C, Special Condition Six, which outlines the requirements for the proper collection, handling and disposal of sludges and other solids.

22.    On October 17, 2017, the PADEP conducted a routine inspection of the GTSA waste treatment plant facility and encountered EVANS JR. who was operating the plant that day.   PADEP personnel observed a floating layer of sewage solids covering the entire surface of the Sequence Batch Reactor (SBR), part of the treatment process. PADEP personnel also saw an accumulation of sewage solids in the

8

ultraviolet (UV) disinfection unit that had replaced the chlorine contact tank.   During the inspection, accumulated sewage solids, including shredded paper or plastic, and Sphaerotilus (sewage fungus) were observed in the unnamed tributary immediately below the outfall pipe, which is the authorized location where treated wastewater is discharged into the unnamed tributary.   PADEP advised defendant EVANS JR. of these problems, but he took no action while the PADEP inspectors were at the facility.   These observed site conditions violated GTSA NPDES Permit PA 0061671 Section A.C.1. and the permit's requirement to maintain the treatment control equipment, NPDES Permit PA 0061671 Section B.D.2.

23.   Following the inspection, defendant EVANS SR. sent PADEP a letter in which he stated that the outfall had been cleaned and restored to normal operating condition.

24.   On December 12, 2017, agents from the EPA and FBI executed a search warrant at the GTSA plant and encountered EVANS SR. and EVANS JR. upon arrival.   Agents immediately observed that the GTSA wastewater treatment plant was discharging, partially treated, at best, sewage, solids and sludge.   A thick brown layer of

scum, indicative of too much sludge in the treatment system, was observed overflowing the SBR reactor.   The waste water level was so high that wastewater containing clumps of sewage solids was flowing over the disinfection unit's weir directly into the outfall.   As observed during PADEP'S inspection in October, 2017, shredded paper or plastic, sewage solids and sludge were observed in the unnamed tributary or on its banks.

25.   The conditions observed at the GTSA plant on December 12, 2017 violated the NPDES permit, Part C, Special Condition Six, which outlines the requirements for the proper collection, handling and disposal of sludges and other solids, and Section B.D.2 of the permit requiring proper operation and maintenance.

THE GRAND JURY CHARGES:

## COUNT 1

### 33 United States Code, § 1319(c)(2)(A)
### (Failure to Operate and Maintain in Violation of a CWA Permit)

26.    The factual allegations contained in paragraphs 1 through 25 of this Indictment are incorporated herein.

27.    On or about April 24, 2013, in the Middle District of Pennsylvania, the defendant,

### BRUCE EVANS, SR.

knowingly violated and caused the violation of a permit condition of the GTSA permit issued under 33 U.S.C. § 1342, that is, the defendant knowingly violated permit conditions by failing to properly supervise, operate and maintain the GTSA treatment facility by intentionally pumping the contents of the chlorine contact tank, including solids and sewage sludge, onto the ground and into the grass, in violation of NPDES Permit PA 0061671, Part C, Special Condition Six.

In violation of Title 33, United States Code, Section 1319(c)(2)(A), and Title 18 United States Code, Section 2.

11

THE GRAND JURY FURTHER CHARGES:

## COUNT 2

33 United States Code, § 1319(c)(2)(A)
(Failure to Operate and Maintain in Violation of a CWA Permit)

28.    The factual allegations contained in paragraphs 1 through 25 of this Indictment are incorporated herein.

29.    On or about October 17, 2017, in the Middle District of Pennsylvania, the defendants,

### BRUCE EVANS, SR.
and
### BRUCE EVANS, JR.

knowingly violated and caused the violation of a permit condition of the GTSA NPDES permit issued under 33 U.S.C. § 1342, that is, the defendants knowingly violated permit conditions by failing to properly supervise, operate and maintain the GTSA treatment facility by knowingly allowing waste materials, including paper and/or plastic, partially treated sewage and sewage solids, and Sphaerotilus (sewage fungus) to not be properly treated and to accumulate below the outfall of the sewage treatment plant in the unnamed tributary, in violation of NPDES Permit PA 0061671 Sections A.C.1 and B.D.2.

12

In violation of Title 33, United States Code, Section 1319(c)(2)(A), and Title 18 United States Code, Section 2.

THE GRAND JURY FURTHER CHARGES:

### COUNT 3

33 United States Code, § 1319(c)(2)(A)
(Discharge in Violation of a CWA Permit)

30.    The factual allegations contained in paragraphs 1 through 25 of this Indictment are incorporated herein.

31.    NPDES Permit, Section A.I contained numerical permit limits for certain pollutants and parameters.   During the search warrant on December, 12, 2017, a sample of wastewater was taken at the location authorized by the permit for compliance monitoring prior to discharge into the unnamed tributary. These limits and sample results include:

| POLLUTANT | LIMIT | SAMPLE RESULT |
|---|---|---|
| CBOD5 | IM - 50 mg/l | 170 mg/l |
| Total Suspended Solids | IM - 60 mg/l | 122 mg/l |

*IM equals Instantaneous Maximum.

32.     On or about December 12, 2017, in the Middle District of
Pennsylvania, the defendants,

**BRUCE EVANS, SR.**
**and**
**BRUCE EVANS, JR.**

knowingly violated and caused the violation of a condition of the GTSA

permit issued under 33 U.S.C. § 1342, that is, the defendants knowingly

discharged pollutants, that is, CBOD 5 and Total Suspended Solids, in

excess of the NPDES permit limits for those pollutants, into the

unnamed tributary to Dundaff Creek, in violation of NPDES Permit PA

0061671 Section A.I.

In violation of Title 33, United States Code, Section 1319(c)(2)(A),

and Title 18 United States Code, Section 2.


THE GRAND JURY FURTHER CHARGES:

<u>COUNT 4</u>

33 United States Code, § 1319(c)(2)(A)
(Discharge in Violation of a CWA Permit)

33.     The factual allegations contained in paragraphs 1 through

25 of this Indictment are incorporated herein.

14

34.    NPDES Permit PA 0061671, Section I.A authorized the GTSA to discharge up to a monthly maximum of 2000 colonies of fecal coliform per 100 milliliters of wastewater to the unnamed tributary for the months October 1st through April 30th.   The monthly permit limit during warmer weather, i.e., May 1st through September 30th, was 200 colonies per 100 milliliters of wastewater.   The permit required the GTSA to sample its discharge weekly for fecal coliform.   GTSA sent its samples to an outside private laboratory for analysis.

35.    For the months of December, 2017, and January, 2018, GTSA did not submit compliance monitoring data to PADEP for fecal coliform or other pollutants despite the NPDES's permit requirement that it do so.   In a letter dated February 26, 2018, the GTSA sent a letter to PADEP explaining that it lacked "reliable data" to submit.

36.    NPDES Permit PA 0061671, Section A.C.1. provides, in relevant part, that GTSA could not discharge floating materials, oil, grease, scum, foam, sheen and substance which produce color, taste, turbidity or settle to form deposits in concentration or amounts sufficient to be, or creating danger of being, inimical to the water uses to be protected or to human, animal, plant or aquatic life.

15

37.   On December 12, 2017, during the execution of the search warrant, a sample was taken of wastewater at the location specified in the permit for compliance monitoring.   Laboratory analysis of that sample showed a fecal coliform level of 161,000 colonies per 100 milliliters of wastewater, a level far in excess of the numerical monthly limits contained in the GTSA NPDES permit, in violation of Section A.C.1.

38.   On or about December 12, 2017, in the Middle District of Pennsylvania, the defendants,

**BRUCE EVANS, SR.**
**and**
**BRUCE EVANS, JR.**

knowingly violated and caused the violation of a condition of the GTSA permit issued under 33 U.S.C. § 1342, that is, the defendants knowingly discharged a pollutant, that is, Fecal Coliform, into the unnamed tributary to Dundaff Creek, in violation of NPDES Permit PA 0061671, Section A.C.I.

In violation of Title 33, United States Code, Section 1319(c)(2)(A), and Title 18 United States Code, Section 2.

THE GRAND JURY FURTHER CHARGES:

## COUNT 5

33 United States Code, § 1319(c)(4)
(False Statements in Violation of CWA)

39.    The factual allegations contained in paragraphs 1 through 25 of this Indictment are incorporated herein.

40.    NPDES Permit PA 0061671, Section I.B.1.D.1 required the GTSA to employ wastewater plant operators certified by the Commonwealth of Pennsylvania.

41.    On or about June 29, 2017, in the Middle District of Pennsylvania, the defendant,

### BRUCE EVANS, JR.

knowingly caused false material statements, representations, and certifications to be made in applications, records, reports, plans, and other documents filed and required to be maintained under the CWA and the regulations promulgated thereunder, that is, the defendant knowingly submitted and caused to be submitted an "Application for Certification to Operate Water or Wastewater Systems" to be submitted to the Pennsylvania Department of Environmental Protection, in

17

pursuit of a Wastewater Systems Operator's License required by the GTSA NPDES permit, that contained false information regarding his prior operator's experience, to wit: the defendant falsely reported part-time employment with the Greenfield Township Sewer Authority that involved regularly performing operator duties up to 15 hours per week from January 2010 to June 2017, when, in fact, he knew he had not started working as an operator until on or about March 2017.

All in violation of Title 33, United States Code, Section 1319(c)(4), and Title 18, United States Code, Section 2.


THE GRAND JURY FURTHER CHARGES:

## COUNTS 6 through 13

### Title 18, United States Code, § 1343
### (Wire Fraud)

42. The factual allegations contained in paragraphs 1 through 25 of this Indictment are incorporated herein.

43. As the manager of the GTSA, defendant EVANS SR. held administrative responsibilities for the GTSA including billing customers, collection of sewer related bills, ordering supplies,

18

processing payroll, managing GTSA bills and invoices, and preparing monthly "Manager's Reports" submitted to the GTSA Board.   In this role, defendant EVANS SR. exercised control over financial accounts related to the GTSA.

44.   During his tenure as manager for the GTSA and as a GTSA Board Member, defendant EVANS SR. fraudulently, improperly, and unlawfully converted funds and property of the GTSA for his own personal benefit and unlawful enrichment, and for the benefit and unlawful enrichment of a family member.

45.   It was part of the scheme to defraud that defendant EVANS SR. obtained for personal use a cell phone and electronic tablet with AT&T cellular phone and internet service, and used GTSA funds to pay for such services without authorization or approval of the GTSA Board and unknown to Board members.

46.   It was part of the scheme to defraud that defendant EVANS SR. routinely fueled his personal vehicle(s) and charged the cost of the fuel to the GTSA-held charge account or GTSA credit card without authorization or approval of the GTSA Board and unknown to Board members.

19

47. It was part of the scheme to defraud that defendant EVANS SR. fraudulently expended GTSA funds to pay for expenses related to the education and operator's licensure of his son, defendant EVANS JR., without authorization or approval of the GTSA Board and unknown to Board members.

48. It was part of the scheme to defraud that EVANS SR. used employees and other resources of the GTSA, while the employees were being paid by the GTSA, to perform repair work on grinder pumps pulled for repair from other jurisdictions, namely, the Silver Lake Township Municipal Authority. Thereafter, the Silver Lake Township Municipal Authority paid the defendant EVANS SR. for the pump repair work. As a result, the defendant EVANS SR. was unlawfully enriched at the expense of the GTSA.

49. From on or about February 1, 2014 and continuing through on or about December 31, 2017, in the Middle District of Pennsylvania, the defendant,

BRUCE EVANS, SR.

having knowing devised and intended to devise a material scheme to defraud the GTSA and to obtain money and property of the GTSA by

20

means of materially false and fraudulent pretenses, representations and promises, did for the purpose of executing the scheme and artifice to defraud, and attempting to do so, knowingly cause to be transmitted via wire communications in interstate commerce the payment of the following fraudulent checks, among others:

| COUNT | DATE | DESCRIPTION |
|---|---|---|
| 6 | April 20, 2017 | Check # 8965 issued in the amount of $88.85 payable to AT&T |
| 7 | June 15, 2017 | Check # 8996 issued in the amount of $90.85 payable to AT&T |
| 8 | April 12, 2017 | Check # 8963 issued in the amount of $310.40 payable to Lapera Oil Co. |
| 9 | May 16, 2017 | Check # 8981 issued in the amount of $356.25 payable to Lapera Oil Co. |
| 10 | Feb. 11, 2017 | Check # 8920 issued in the amount of $328.00 payable to American Express ending 9-02004 |
| 11 | May 16, 2017 | Check # 8976 issued in the amount of $247.01 payable to American Express ending 9-02004 |

21

| 12 | Nov. 18, 2015 | Check # 8673 issued in the amount of $639.72 payable to George R. Everett |
| 13 | Jan. 14, 2016 | Check # 8696 issued in the amount of $354.01 payable to George R. Everett |

All in violation of Title 18, United States Code, § 1343.

A TRUE BILL



DAVID F. FREED
UNITED STATES ATTORNEY

DATE: 01/08/2019

By: MICHELLE OLSHEFSKI
ASSISTANT U.S. ATTORNEY

22