UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIM. NO. 3:CR-19-09 |
| | : | |
| v. | : | (JUDGE CAPUTO) |
| | : | |
| BRUCE EVANS, SR., | : | FILED ELECTRONICALLY |
| Defendant | : | |

**GOVERNMENT'S BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS COUNTS 1 THROUGH 4 OF
THE INDICTMENT AND BILL OF PARTICULARS**

COMES NOW, the United States of America and submits its opposition to defendant's Motion to Dismiss Counts 1 through 4 of the indictment, and defendant's Requests a Bill of Particulars (Doc. 40). Because the indictment, taken as a whole, contains more than enough factual allegations to put the defendant on notice of the charges against him; and the charging paragraphs track the language of 33 U.S.C. § 1319(c)(2)(A); and because the Government has provided extensive discovery in this case, the defendant's motion should be denied.

1

## I.   Legal Overview

The Clean Water Act (CWA) prohibits the discharge of any

pollutant from a point source into navigable waters of the United States

without a permit.   33 U.S.C. § 1311(a).   The Environmental Protection

Agency's (EPA) National Pollutant Discharge Elimination System

(NPDES) is a program under the Clean Water Act (33 U.S.C. Section

1319) and is authorized by both federal and state laws (Pennsylvania

Clean Streams Law & PA Code Title 25) and associated rules and

regulations under which the Commonwealth is authorized to take

primary responsibility for issuing CWA permits.   The program is

meant to preserve and protect the waterways of the nation by setting

limits and standards for the proper operation of wastewater treatment

systems, including required compliance sampling and truthful

reporting.   EPA's NPDES permit program controls discharges of

pollutants, as pollutants degrade surface waters making them unsafe

for drinking, fishing, swimming, and other activities.

Industrial, municipal, and other facilities must obtain permits if

their discharges go directly to surface waters from a point source.   The

2

PA Department of Environmental Protection (PADEP) is the state agency responsible for administering the NPDES program in Pennsylvania.

All treatment facilities that discharge wastewater must have an NPDES permit.   The NPDES permit is specific to each treatment facility and regulates pollutants and describes the terms and conditions that a permit holder must meet in order to discharge properly treated wastewater.   The program requires permit holders to participate in a self-monitoring program where they must collect samples and conduct analysis on the effluent produced by the permitted facility.   Any failure in regard to self-monitoring (such as fraudulent, inaccurate or misleading results) destroys public confidence in this type of program to effectively protect our waterways.[1]

---

[1]     The foremost purpose of the CWA is "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251. To that end, the CWA prohibits all discharge of pollutants into navigable waters except inasmuch as one of several enumerated statutory exceptions applies. *See* 33 U.S.C. § 1311(a). One such exception is where the polluter has been issued a National Pollution Discharge Elimination System ("NPDES") permit. *See* 33 U.S.C. § 1342. The effluent discharge standards or limitations specified in an NPDES permit define the scope of the authorized exception to the

As alleged in the indictment, the defendant (Bruce Evans, Sr.) was a Greenfield Township Supervisor, a Greenfield Township Sewer Authority Board Member, and Manager of the Greenfield Township Sewer Authority (GTSA).   The defendant was an employee of both Greenfield Township and the GTSA.   At the time of the indictment, the defendant served as a Greenfield Township Supervisor.   Defendant was not certified as a wastewater treatment plant operator for any time charged in the indictment.

## II.   Factual Background

### April 24, 2013 PADEP Inspection

The PADEP conducted an inspection of the GTSA facility on April 24, 2013.   PADEP personnel were met by the defendant upon arrival and observed the defendant admittedly engaged in the operation of the GTSA facility while having no PADEP certification to do so.   Upon

---

prohibition in § 1311(a), and authority to administer the NPDES permit system may be delegated to a state or regional agency where the state or regional regulatory scheme meets certain criteria. *See* 33 U.S.C. § 1342(b); *see also Citizens for a Better Environment–California v. Union Oil Company of California,* 83 F.3d 1111, 1113–14 (9th Cir.1996).

arrival, PADEP personnel observed the defendant in the act of pumping the contents of the chlorine contact tank, including solids and sewage sludge, onto the ground and into the grass.   PADEP personnel reported that the untreated contents being discharged by the defendant ultimately flowed into the discharge channel from the headwall down to the confluence with the unnamed tributary to Dundaff Creek, where the discharge was observed by PADEP personnel.   PADEP personnel noted that day and in previous inspection reports that proper maintenance required that the tanks be cleaned periodically to allow the disinfection process to function properly, and that sludge should be <u>hauled</u> away for proper disposal.   PADEP inspectors had previously informed the defendant that more sludge needed to be physically hauled from the GTSA, despite any associated costs.   On this day, the defendant stated that it was his decision to pump the sludge directly onto the ground in lieu of have the sludge hauled from the facility.

Pumping of the sludge onto the ground which flowed into the receiving stream violated the NPDES Permit, Part C, Special Condition

Six, which outlines the requirements for the proper collection, handling and disposal of sludges, and other solids.

The defendant also stated that on behalf of Greenfield Township, he had contracted with an independent engineering outfit to operate the GTSA facility and that the operator appeared at the facility two or three days a week.   Evans affirmed that in his view, appearance of the plant operator only two or three days a week was all that was necessary.   On this date, PADEP personnel observed obvious operational problems with the facility downstream from the discharge outfall, noting heavy growth of *Sphaerotilus natans*,[2]  and a build-up of solids and GTSA facility debris, such as condoms and personal hygiene applicators, on the bottom of the stream and on the banks.

---

[2] Sphaerotilus natans is an aquatic bacteria associated with polluted water.   Known as a sewage fungus, it can cause bulking of sludge in the WWTP clarifier tank and is controlled by chlorination.   If inadequate chlorination occurs in treatment, Sphaerotilus natans bacterial filaments may be noted in the receiving stream, along with the untreated or partially treated sewage.

## October 17, 2017 PADEP Inspection

On October 17, 2017, PADEP personnel conducted another inspection of the GTSA plant.   Upon arrival, they were met by Bruce Evans, Jr., son of the defendant and co-defendant.   Evans, Jr. reported that he was a certified wastewater operator (PA Certificate No. S20638) as of August 17, 2017 and was employed directly by GTSA to operate the GTSA facility.

During the October 17, 2017 inspection, PADEP noted several operation and maintenance issues at the GTSA facility.   PADEP personnel noticed heavy scum on the sequencing batch reactors (SBRs). The SBR components activate the sludge process for the treatment of wastewater.   The SBRs treat wastewater such as sewage or output from anaerobic digesters or mechanical biological treatment facilities in batches.   The presence of heavy scum is a Permit violation pursuant to Part A. C.1, pertaining to the discharge of scum that has settled to form deposits in the effluent.   PADEP personnel conducted a settleability test that revealed a very high score of 910 after 30 minutes, with a "*sludge blanket pulling towards the sunlight indicating photo active*

*filaments within the biomass.*"    Sludge accumulation is a violation of the Permit under Part B.1.D. 2, Proper Operation and Maintenance. Sludge must be properly handled under Part C.1, Special Condition Six.

A PADEP inspection of the outfall discharge point revealed a significant quantity of sewage fungus and sludge around the outfall area.    PADEP informed Evans, Jr. that those conditions were unacceptable and a Permit violation.    PADEP raised concerns about the operations of the GTSA facility in general, and Evans, Jr. responded that he was not familiar with the process control operations.    Evans, Jr. offered that when he took the certification test in May 2017, he knew how process control worked, but now (5 months later), he had no recall.

Following the inspection on October 17, 2017 and subsequent notices of violations, the defendant (Evans, Sr.) sent a letter to the PADEP in which he stated that the outfall had been cleaned and restored to normal operating condition.

## December 12, 2017 Execution of Federal Search Warrant

On December 12, 2017, Special Agents from the EPA, FBI, and PADEP executed a Federal search warrant at the GTSA facility and encountered the defendant upon arrival.   Agents immediately observed that the GTSA plant was discharging partially treated, at best, sewage, solids and sludge.   A thick brown layer of scum, indicative of too much sludge in the treatment system, was observed overflowing the SBR. The waste water level was so high that wastewater containing clumps of sewage solids was flowing over the disinfection unit's weir directly into the outfall.   In similarity to what was observed during the PADEP's inspection in October, 2017, shredded paper or plastic, sewage solids and sludge were observed in the unnamed tributary or on its banks. On this date, the defendant acknowledged that the facility was again in violation.

## Indictment

On January 8, 2019, a Federal Grand Jury in Scranton returned a multi-count indictment against the defendant and co-defendant Bruce Evans, Jr.   (Doc. 1).   The defendant now alleges that Counts 1

through 4 of the indictment "must be dismissed because the Government has failed to allege that any pollutants discharged actually "reached the waters of the United States – an essential element of the offense."   The defendant also disputes the *mens rea* element of the Clean Water Act (CWA) violations contained in the indictment.   The defendant argues in the alternative that a bill of particulars should be ordered while arguing the insufficiency of the 22-page indictment.

The defendant is legally incorrect in his argument to dismiss Counts 1 through 4 of the indictment, as alleged violations of the GTSA NPDES permit does not require the Government to allege that any pollutant "actually reach" the waters of the United States.   He is likewise wrong in arguing that a bill of particulars is necessary to allow him to prepare his defense.   It is noted that while charged with violations of 18 U.S.C. § 1343 (wire fraud) in Counts 6 through 13 of the indictment, the defendant does not include those Counts in his arguments.

10

III.   <u>Legal Discussion</u>

A.   <u>The Indictment Properly States an Offense Under Federal Rule of Criminal Procedure 7(c)</u>

The court should reject the defendant's motion to dismiss Counts 1 through 4 of the indictment alleging failure to state an offense because the indictment's language meets the requirements of Fed. R. Crim. P. 7(c) and relevant case law; tracks the wording of 33 U.S.C. § 1319(c)(2)(A), which the defendant is alleged to have violated; and comports with existing CWA case law in the Third Circuit on the *mens rea* requirement in § 1319(c)(2)(A).

The indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged……   For each count, the indictment or information must give the official or customary citation to the statute, rule, regulation or other provision of law that the defendant is alleged to have violated."   Fed. R. Crim. P. 7(c).   Here, the indictment on its face meets the requirements not only of Rule 7(c), but also the test outlined by the Supreme Court in *Hamling v. United States*, 418 U.S. 87, 117 (1974)

("an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense" (citations omitted)).   According to the Third Circuit, "an indictment is facially sufficient if it (1) contains the elements of the offenses intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent conviction."   *United States v. Huet*, 665 F.3d 588, 595 (3d Cir. 2012) (internal quotations omitted).

"The rules governing how a charge must be set forth in the indictment are not exacting.   Indeed, they 'were designed to eliminate technicalities in pleadings and are to be construed to secure simplicity in procedure.'"   *United States v. Stevenson*, 832 F.3d 412, 424 (3d Cir. 2016), *quoting United States v. Bergrin*, 650 F.3d 257, 264 (3d Cir. 2011) (citations and internal quotation marks omitted).   "[N]o greater specificity than the statutory language is required so long as there is

sufficient factual orientation to permit a defendant to prepare his defense and invoke double jeopardy.'"   *Huet*, 665 F.3d at 595, *quoting United States v. Kemp*, 500 F.3d 257, 280 (3d Cir. 2007), *quoting United States v. Rankin*, 870 F.2d 109, 112 (3d Cir. 1989).

In *Stevenson*, the defendant challenged a fraud count he alleged did not contain a jurisdictional element, *i.e.,* interstate commerce, in a case involving possession of a fraudulent driver's license to aid in the distribution of a controlled substance and unlawful possession of a firearm.   The Third Circuit noted that while the count did not specifically contain the interstate commerce element, the indictment could be read to include such an element and rejected the defendant's challenge.   *Stevenson*, 832 F.3d at 425-26.

In this case, the indictment satisfies all the requirements set forth by Rule 7(c), the Supreme Court and the Third Circuit.   Title 33 U.S.C. § 1319(c)(2) makes it a felony to "knowingly violate [ ] §§ 1311, 1312, 1316, 1317, 1318, 1321(b)(3), 1328, or 1345 of this title….."   Section 1311, requires persons to obtain a CWA National Pollutant Discharge Elimination System (NPDES) permit in order to discharge pollutants

legally from a point source into a water of the United States.

Section 1319(c)(2)A) of the CWA makes it unlawful for any person to, among other things, knowingly violate and cause a violation of a permit, which is what is alleged in Counts 1 through 4 of the indictment.   In those Counts, the defendant is charged with violating the GTSA permit issued under 33 U.S.C. § 1342 by intentionally pumping the contents of the chlorine contact tank, including solids and sewage sludge, onto the ground and into the grass, in violation of NPDES Permit PA 0061671, Part C, Special Condition Six (**Count 1**); by knowingly allowing waste materials, including paper and/or plastic, partially treated sewage and sewage solids….. to not be properly treated and to accumulate below the outfall of the sewage treatment plant in the unnamed tributary (**Count 2**); by knowingly discharging pollutants, that is, CBOD 5 and Total Suspended Solids, in excess of the NPDES permit limits for those pollutants into the unnamed tributary to Dundaff Creek (**Count 3**); and by knowingly discharging a pollutant, that is, Fecal Coliform, into the unnamed tributary to Dundaff Creek, in violation of NPDES Permit PA 0061671, Section A.C.I. (**Count 4**).

14

Despite defendant's claims, the charging language of the 22-page indictment, taken as a whole, sets forth the elements of CWA violations and provides the defendant with sufficient notice as to the factual basis for the charges.

The indictment, at paragraphs 2 and 3, provides the defendant with notice of his status *vis a vis* the Greenfield Township Sewer Authority (GTSA), and the fact that during the time period charged, he was not certified by the Pennsylvania Department of Environmental Protection (PADEP) as a wastewater treatment plant operator. Essentially, the defendant had no authority to be engaged in the operation and maintenance of the GTSA plant.   It remains unclear why the defendant involved himself in an area of expertise that requires PADEP certification.

The indictment, at paragraphs 7 through 12, articulates the applicable law, including the permit program under the National Pollution Discharge Elimination Systems (NPDES) and the governing bodies, the law's purpose, and relevant definitions as found in the law applicable to the defendant's conduct.

15

The indictment, at paragraphs 13 through 19, references the specific permit issued to the GTSA, the dates of issuance and applicable coverage periods, the specific NPDES Permit number, parameters and authority of the permit, as well as specific identification of the unnamed tributary of Dundaff Creek in Watershed 4-F, specifically tracking the flow of Dundaff Creek into the Tunkhannock Creek, "which then flows into the Susquehanna River, a navigable waterway of the United States.

The indictment, at paragraphs 20 through 25, alleges various acts and conduct of the defendant in terms of what he did, what he knew, and when he did it.

Counts 1 through 4 of the indictment track the statutory language contained in Section 1319(c)(2)(A).   The Counts charge that the defendant, on or about certain dates, knowingly violated and caused violations of the NPDES Permit issued to the GTSA, as stated with particularity in the indictment.   The charging paragraphs contain the relevant *mens rea* requirement found in the statute, and conform to Third Circuit case law regarding use of the word "knowing" in CWA

16

prosecutions.   "Knowingly," as used in the CWA, means an "act" which is done "voluntarily and intentionally, and not because of mistake or accident or other innocent reason." *United States v. West Indies Transport, Inc.*, 127 F.3d 299, 310 (3d Cir. 1997).   This is the *mens rea* alleged in the indictment.

The CWA provides for felony violations based upon "knowing" conduct.   33 U.S.C. § 1319(c)(2).   CWA felony offenses are general intent crimes which do not require the Government to show that the defendant knew the law or intended to violate it.   *United States v. Cooper*, 482 F.3d 658, 665 (4th Cir. 2007); see also, *United States v. Sinskey*, 119 F.3d 712 (8th Cir. 1997); *United States v. Hopkins*, 53 F.3d 533 (2d Cir. 1995); *United States v. Weitzenhoff*, 35 F.3d 1275 (9th Cir. 1994).   As with other federal crimes using the "knowing" mental state standard, the Government must prove a defendant's knowledge of the facts that make the action unlawful, not knowledge of the law itself; a mistake of fact defense is preserved, but a mistake of law defense is not permitted.   The majority view among circuit courts is that the word "knowingly" as used in 33 U.S.C. § 1319(c)(2), applies to the act of

17

discharging a pollutant, but not to other elements of the offense.   Cf.
*United States v. Wilson*, 133 F.3d 251 (4th Cir. 1997) and *United States
v. Ahmad*, 101 F.3d 386 (5th Cir. 1996).

The Government is not required to prove the defendant's
knowledge of the law, that is, that the material came within the legal
definition of a pollutant; that the conveyance came within the legal
definition of a point source; that the water came within the legal
definition of a water of the United States; or that a permit was required
for the discharge.   The Government is also not required to prove the
defendant's knowledge of any connections between the receiving water
body and any other water body or that the defendants knew his or her
actions were unlawful or that they violated the CWA.   *United States v.
Cooper*, 482 F.3d at 665-667.   As the Supreme Court stated in *Bryan v.
United States*, 524 U.S. 184, 193 (1998) (footnote omitted), "unless the
text of the statute dictates a different result, the term 'knowing' merely
requires proof of knowledge of the facts that constitute the offense." *See
also Rogers v. United States,* 522 U.S. 252 (1998) (plurality opinion);
*Staples v. United States,* 511 U.S. 600 (1994); *United States v.*

18

*International Minerals & Chemical Corp.*, 402 U.S. 558 (1971).

The Government need not prove a defendant's factual knowledge that the pollutant was going into the "waters of the United States" as an essential fact that makes the act unlawful, in view of *United States v. Ortiz*, 427 F.3d 1278, 1283 (10th Cir. 2005) (CWA does not require proof that a defendant knew that a discharge would enter United States waters) and, more recently*, United States v. Cooper*, 482 F.3d at 665. However, the Government needs to prove that the discharges were heading into a body of water. *Id.*

Additionally, the charging paragraphs correctly cite §1319(c)(2)(A) as the law alleged to have been broken by the defendant as required by Rule 7(c).

Thus the indictment correctly charges the defendant with the applicable offenses and puts him on notice of the charges.   The detailed indictment contains more than enough legal and factual detail to apprise the defendant of what he must be prepared to meet at trial and to permit him to assert any claim of double jeopardy.

It is clear that the defendant really seeks to obtain a ruling from the court on whether the defendant acted "knowingly" with respect to each element of the offenses charged in violation of § 1319(c)(2)(A). The defendant's citation to *United States v. Ahmad*, 101 F.3d 386 (5th Cir. 1997) and *United States v. Wilson*, 133 F.3d 251 (4th Cir. 1997), without noting that the Fourth Circuit limited *Wilson* to its facts in *United States v. Cooper*, 482 F.3d 658 (4th Cir. 2007), or discussing other CWA intent appellate decisions, demonstrates that the parties disagree on which elements "knowingly" will apply to in this case. However, this is an issue for the court to decide at the jury instruction phase of the case, not now.   Given the defendant's clear articulated conduct in relation to personally pumping sewage sludge from the chlorine contact tank, including solid waste, directly onto the ground and into the grass, as well as other of the defendant's acts articulated in the indictment, the defendant has more than ample notice of the charges he faces.   The indictment meets the requirements of Rule 7(c).

20

## B.   Defendant is not entitled to a Bill of Particulars

Rule 7(f) of the Federal Rules of Criminal Procedure allows a district court to direct the filing of a bill of particulars.   In determining whether to grant a motion for a bill of particulars, a trial court must strike a "prudent balance" between the defendant's interest in securing information and the Government's interest in not committing itself to facts before it is in a position to do so. *United States v. Rosa*, 891 F.2d 1063, 1066 (3d Cir. 1989).   "The purpose of a bill of particulars is to inform the defendant of the nature of the charges brought against him to adequately prepare his defense, to avoid surprise during the trial and to protect him against a second prosecution for an inadequately described offense."   *United States v. Addonizio*, 451 F.2d 49, 63-64 (3d Cir. 1971).   A bill of particulars should only be granted "where the indictment is too vague or indefinite to reasonably allow a defendant to prepare his defense." *Id.*   A bill of particulars "is not be used by the defendant as a discovery tool," *United States v. Fischbach & Moore, Inc.,* 576 F. Supp. 1384-1389 (W.D. Pa. 1983), but rather is appropriate only when "an indictment's failure to

21

provide factual or legal information significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial.   *United States v. Rosa,* 891 F.2d 1063, 1066 (3d Cir. 1989).

In considering whether to grant a motion for a bill of particulars, courts must consider "numerous countervailing considerations," including: unfairness to the Government, *Rosa*, 891 F.2d at 1066, the sufficiency of the indictment, *Fischbach & Moore, Inc.*, 576 F. Supp. at 1389, and the extent to which the Government has provided discovery, *United States v. Urban*, 404 F.3d 754, 772 (3d Cir. 2005).   "A bill of particulars, unlike discovery, is not intended to provide the defendant with the fruits of the Government's investigation.   Rather, it is intended to give the defendant only that minimum amount of information necessary to permit the defendant to conduct his own investigation."   *United States v. Smith*, 776 F.2d 1104, 1111 (3d Cir. 1985) (internal citations omitted).

The 22-page indictment in this case clearly describes the Government's theory of the case, summarizes the evidence and is not

vague in any way.   The Government has already provided voluminous discovery to the defendant, well beyond what the law requires at this point in the proceedings.   The Government has essentially provided its complete investigative file, including the fruits of all evidence seized from the GTSA facility and the defendant's office during the execution of a federal search warrant in December of 2017.   All physical evidence seized has been made available to the defendant for inspection.   In addition, the Government has provided a complete "mirror image" of all seized electronic data in this case, whether relevant or not.

The Government has provided the defendant with thousands of pages of material garnered through the investigation including all financial information in its possession, inspection reports, notices of violations, contracts, permits, laboratory results, and all photographs taken throughout the investigation.   The Government has provided all of the defendant's statements, as well as all video captures and photographs relevant to the instant prosecution.

The Government has provided the defendant with the entire affidavit in support of the search warrant executed in December 2017 at

the GTSA facility.   The affidavit provides detailed information about the federal investigation, the manner in which the information was obtained, and the conclusions drawn from the information.   The Government has provided the defendant with thousands of pages of additional documents referenced in the affidavit of probable cause, including all minutes from GTSA Board meetings for the time period charged in the indictment.

All of the information the defendant now seeks by way of a bill of particulars is included in the discovery currently in the hands of the defendant.   The Government will continue to comply with all discovery obligations and will produce materials as the investigation continues and information becomes available.

It is well-settled that a defendant is not entitled to a bill of particulars as a matter of right.   *Wong Tai v. United States*, 273 U.S. 77, 82 (1927).   Rule 7(f) of the Federal Rules of Criminal Procedure authorizes a bill of particulars only where an indictment fails to sufficiently apprise the defendant of the offense(s) with which he is charged.   Such a bill is not necessary when the indictment "sets forth

the elements of the offense charged and sufficiently apprises the defendant of the charges to enable him to prepare for trial." *United States v. Kendall*, 665 F.2d 126, 134 (7th Cir. 1981); *United States v. Canino*, 949 F.2d 928, 949 (7th Cir. 1991). See also *United States v. Hamling*, 418 U.S. 87, 117-19 (1974) (indictment that repeats wording of the statute is generally sufficient.)

A charging document satisfies this standard if it sets forth the elements of each offense charged, cites the statutes violated, and generally identifies the time and place of the defendant's conduct that allegedly violated the statute. *United States v. Roya*, 574 F.2d 386, 391 (7th Cir. 1978).   This is true because a defendant has a constitutional right to know only the offenses with which he is charged, not "the details of how it will be proved." *United States v. Kendall*, 665 F.2d at 135; *United States v. Richardson*, 130 F.3d 765, 776 (7th Cir. 1997); *United States v. Balogun*, 971 F. Supp. 1215, 1227 (N.D. Ill. 1997).

As this Circuit has clearly stated:

A bill of particulars, unlike discovery, is not intended to provide the defendant with the fruits of the government investigation. . . . Rather, it is intended to give the defendant

25

only that minimum of information necessary to permit the defendant to conduct his *own* investigation.

*United States v. Smith*, 776 F.2d 1104, 1111 (3d Cir. 1985) (citations omitted) (emphasis in original); *see also United States v. Automated Medical Laboratories, Inc.*, 770 F.2d 399, 405 (4th Cir. 1985) ("[a] bill of particulars is not to be used to provide detailed disclosure of the Government's evidence in advance of trial."); *Hemphill v. United States*, 392 F.2d 45, 49 (8th Cir. 1968)("[a]cquisition of evidentiary detail is not the function of the bill of particulars").   Similarly, a motion for a bill of particulars should be denied where the defendant is inappropriately seeking to require the Government to "weave the information at its command into the warp of a fully integrated trial theory for the benefit of the defendants." *United States v. Addonizio*, 451 F.2d at 64 (3d Cir. 1971*); United States v. Burgin*, 621 F.2d 1352, 1359 (5th Cir. 1980) (a bill of particulars "is not designed to compel the Government to detailed exposition of its evidence or to explain the legal theories upon which it intends to rely at trial").

A bill of particulars is even more inappropriate when, as in this case, the Government supplements an indictment with extensive discovery.

For the foregoing reasons, it is clear that the Government should not be ordered to produce a bill of particulars and the defendant's motion should be denied.   The indictment in this case complies with the requirement that all essential elements of the alleged crimes be pleaded.   Moreover, the Government has provided the defendant with extensive discovery, as well as discovery not yet required to be provided. Therefore, in light of the case law and the specific circumstances of this case, a bill of particulars is simply not warranted.

IV.    <u>Conclusion</u>

WHEREFORE, the Government respectfully requests that the

Court deny the defendant's motion to dismiss Counts 1 through 4 of the

indictment, as well as the defendant's alternative request for a bill of

particulars.

Respectfully submitted,

DAVID J. FREED
United States Attorney

<u>/s/ Michelle L. Olshefski</u>
MICHELLE L. OLSHEFSKI
Assistant U.S. Attorney
Atty ID No. PA 79643

Date:   December 2, 2019

28

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 2nd day of December, 2019, I caused the foregoing "**Government's Brief in Opposition to Defendant's Motion to Dismiss Counts 1 through 4 of the Indictment and for Bill of Particulars**" to be served upon Patrick Casey, Esquire, counsel of record for the defendant, and that Attorney Casey is a filing user under the ECF system.

/s/ Michelle Olshefski
MICHELLE OLSHEFSKI
Assistant United States Attorney