UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIM. NO. 3:CR-19-09 |
| | : | |
| v. | : | (JUDGE CAPUTO) |
| | : | |
| BRUCE EVANS, SR., | : | FILED ELECTRONICALLY |
| Defendant | : | |

**GOVERNMENT'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO AUTHORIZE SUBPOENAS DUCES TECUM**

COMES NOW, the United States of America and responds in opposition to defendant's Motion to Authorize Subpoenas Duces Tecum.

I. Introduction

The defendant has asked the Court to issue subpoenas pursuant to Federal Rule of Criminal Procedure 17(c). (Doc. 36). A party seeking such subpoenas bears the burden of showing that the subpoenas seek relevant and admissible evidence, and are written with "specificity." *United States v. Nixon*, 418 U.S. 683, 700 (1974). The defendant's proposed subpoenas demand broad and general categories of information, and the defendant has failed to proffer sufficient reasons

1

for the issuance of such unusual subpoenas. The Government hereby submits this response in opposition to defendant's requests. The defendant has not met the requirements for relevancy, admissibility, and specificity. The defendant is attempting to use Rule 17(c) as a discovery device. Finally, a number of the documents sought are privileged and/or protected from disclosure pursuant to statute and the Federal Rules of Criminal Procedure.

II.   Background

On January 8, 2019, a Federal Grand Jury in Scranton returned a multi-count indictment against the defendant and co-defendant Bruce Evans, Jr. (Doc. 1). In **Count 1**, the defendant is charged with violating the GTSA permit issued under 33 U.S.C. § 1342 on April 24, 2013 by intentionally pumping the contents of the chlorine contact tank, including solids and sewage sludge, onto the ground and into the grass, in violation of NPDES Permit PA 0061671, Part C, Special Condition Six. **Count 2** charges that on October 17, 2017, the defendant knowingly allowed waste materials, including paper and/or plastic, partially treated sewage and sewage solids….. to not be properly treated

and to accumulate below the outfall of the sewage treatment plant in the unnamed tributary.   **Count 3** charges that on December 12, 2017, the defendant knowingly discharged pollutants, that is, CBOD 5 and Total Suspended Solids, in excess of the NPDES permit limits for those pollutants into the unnamed tributary to Dundaff Creek.   **Count 4** charges that on December 12, 2017, the defendant knowingly discharged a pollutant, that is, Fecal Coliform, into the unnamed tributary to Dundaff Creek, in violation of NPDES Permit PA 0061671, Section A.C.I.   **Counts 6 through 13** charge the defendant on specific dates, for specific checks, for specific amounts with wire fraud, in violation of 18 U.S.C. § 1343.

The crimes with which the defendant is charged are limited in time and scope.   In fact, the crime alleged in Count 1 refers to the defendant's conduct specifically on April 24, 2013 which was observed by PADEP personnel on that date.   The crime alleged in Count 2 refers to specific conduct occurring on October 17, 2017 and details what the defendant is charged with having done on that date.   The crime alleged in Count 3 refers to the defendant's specific conduct on December 12,

2017 and details what the defendant is charged with having done on that date. The crime alleged in Count 4 likewise refers to the specific date of December 12, 2017 and details what the defendant is charged with having done on that date.

Similarly, the crimes charged against the defendant in Counts 6 through 13 of the indictment refer to specific dates, specific checks, specific check numbers, and specific amounts. The time period is limited and relatively brief.

The 22-page indictment in this case clearly describes the Government's theory of the case, summarizes the evidence and is not vague in any way. The Government has provided the defendant with extensive discovery at his request. In fact, thousands of pages of discovery has been disclosed. The Government has provided voluminous discovery to the defendant, well beyond what the law requires at this point in the proceedings. The Government has essentially provided its complete investigative file, including the fruits of all evidence seized from the GTSA facility and the defendant's office during the execution of a federal search warrant in December of 2017.

All physical evidence seized has been made available to the defendant for inspection.   In addition, the Government has provided a complete "mirror image" of all seized electronic data in this case, whether relevant or not.

The Government has provided the defendant with thousands of pages of material garnered through the investigation including all financial information in its possession, inspection reports, notices of violations, contracts, permits, laboratory results, and all photographs taken throughout the investigation.   The Government has provided all of the defendant's statements, as well as all video captures and photographs relevant to the instant prosecution.

The Government has provided the defendant with the entire affidavit in support of the search warrant executed in December 2017 at the GTSA facility.   The affidavit provides detailed information about the federal investigation, the manner in which the information was obtained, and the conclusions drawn from the information.   The Government has provided the defendant with thousands of pages of additional documents referenced in the affidavit of probable cause,

including all minutes from GTSA Board meetings for the time period charged in the indictment.

The Government has voluntarily provided the extensive discovery despite the fact that the majority of the documentation, etc. bears no relevance on what is charged in the indictment.

The defendant has sought, by way of discovery motions (Docs. 38 and 40), information relating to witness statements, agents' notes and memoranda, audio recordings involving a separate and distinct criminal defendant, criminal histories, cooperation agreements, etc., all of which is information defendant is well aware is not discoverable at this time. All such information is governed by Federal Rules of Criminal Procedure, statute, and the due process clause of the Constitution, as articulated in *Brady v. Maryland*, 373 U.S. 83 (1963).

Nevertheless, the defendant is now attempting to circumvent the statutorily defined discovery process in criminal cases by requesting Rule 17(c) subpoenas.

III. <u>Legal Standard</u>

Federal Rule of Criminal Procedure 17(c) authorizes a district court to quash subpoenas that are "unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). It "is the responsibility of the Court . . . to ensure that a subpoena secured under Rule 17(c) is for a proper purpose." *United States v. Wecht*, No. 06-0026, 2008 WL 250549, at *2 (W.D. Pa. Jan. 30, 2008) (citing *Bowman Dairy Co. v. United States*, 341 U.S. 214, 221 (1951)); *United States v. Weissmann*, No. 01-529, 2002 WL 31875410, at *5 (S.D.N.Y. Dec. 26, 2002) ("it is the Court's responsibility to ensure that the subpoena is for a proper purpose and complies with the requirements of Rule 17(c)"). The decision to enforce a subpoena is within the court's discretion. *United States v. Baroni*, No. 15-193, 2015 WL 9049528, at *2 (D.N.J. Dec. 16, 2015).

"[R]ule 17(c) is designed as an aid for obtaining relevant evidentiary material that the moving party may use at trial." *United States v. Cuthbertson*, 630 F.2d 139, 144 (3d Cir. 1980). "Courts must be careful that Rule 17(c) is not turned into a broad discovery device, thereby undercutting the strict limitation of discovery in criminal cases

7

found in Fed. R. Crim. P. 16." *Id.* at 146. Rule 17(c) is "not intended to provide an additional means of discovery." *Bowman Dairy*, 341 U.S. at 220.

A defendant seeking the issuance of subpoenas under Rule 17(c) bears the burden of showing "(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.' " *Nixon*, 418 U.S at 699-700. The party seeking a subpoena must show "(1) relevancy; (2) admissibility; and (3) specificity." *Id.* at 700.

The defendant has asked the court to authorize subpoenas pursuant to Federal Rule of Criminal Procedure 17(c). The defendant's broad requests are inconsistent with the spirit and purposes of Rule 17, and the issuance of these subpoenas without appropriate specificity risks their use as a general discovery device. Furthermore, the

issuance of such broad and non-specific subpoenas absent justification may spur additional litigation and ultimately delay these proceedings further.

The defendant's choice of language in these requests betrays their lack of specificity. In fact, the breadth of the defendant's request is enormous. For example, the defendant has alleged that it is necessary for his defense to seek "any and all" information relating to essentially everything that has been documented about individuals and the GTSA over the course of the last two decades. (Def. Br. at 2). Additionally, the defendant requests all correspondence occurring over the "course of two decades" that has occurred between the PADEP and the defendant. (Doc. 36-1, p. 1-2). In similar fashion, the defendant improperly seeks law enforcement communications between the PADEP that reference the defendant, presumably, over the "course of two decades." (Def. Br. at 2, Doc. 36-1, p. 2). The breadth of the defendant's requests is patently obvious, as is his attempt to circumvent the discovery process to obtain material, some of which is privileged, and to which he is not entitled.

A number of the documents demanded, if produced, would disclose inter-agency or intra-agency decision-making functions, and are protected from disclosure by the deliberative process privilege.  *See NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 150-51 (1975); *EPA v. Mink,* 410 U.S. 73, 87 (1973).   This government privilege is an "ancient [one] ... predicated on the recognition 'that the quality of administrative decision-making would be seriously undermined if agencies were forced to operate in a fishbowl.'" *Dow Jones & Co. v. Department of Justice,* 917 F.2d 571, 573 (D.C. Cir. 1990) (quoting *Wolfe v. HHS,* 839 F.2d 768, 773 (D.C. Cir. 1988) (en banc)).   This privilege covers all "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency," as well as documents that would "inaccurately reflect or prematurely disclose the views of the agency." *National Wildlife Fed'n. v. Forest Service,* 861 F.2d 1114,1118-19 (9th Cir. 1988).   In this respect, PADEP inspections are undertaken for reasons having nothing to do with either discharges to waters of the United States via pumping sludge from a contact tank or violations of

10

NPDES permits issued to wastewater treatment facilities. Since the defendant has demanded "[a]ll documents ..." relating to communications between or among PADEP officials and the defendant and law enforcement and the GTSA, the documents may contain recommendations, proposals, or suggestions by PADEP officials having nothing to do with the present criminal case, and/or would be otherwise protected from disclosure pursuant to the deliberative process privilege.

In similar fashion, with respect to the defendant request addressed to the GTSA, an organization with which the defendant has been involved with for more than 20 years, the defendant requests "any and all," essentially everything that has ever been documented regarding the defendant's involvement with the GTSA, including all statements made by any other individuals involved in the GTSA, which the defendant knows full well are Government witnesses. (Doc. 36-1, pp. 1-2). This is but another example of the defendant's attempt to circumvent the discovery process by obtaining Government witness statements to which he is not entitled at this time.

While the defendant claims that certain of his requests are necessary to prove that the defendant was not a certified wastewater treatment plant operator, (Doc. 37 at 2), that is not in dispute. In fact, the Government alleged as much in the indictment at paragraph 3. This request appears to be a fishing expedition, the very type of request not permitted by Rule 17(c).

Additionally, the defendant claims that "……over the course of two decades…….Officials of the PADEP led representatives at the sewer authority to believe that the GTSA was properly operating its sewer plant." (Doc. 37 at 2). This too bears no relevance to the specific dates charged in Counts 1 through 4 of the indictment, which are limited to April 23, 2013, October 17, 2017, and December 12, 2017. The breadth of this request likewise appears to be only a fishing expedition for information that is not relevant to the specific crimes charged, or to which the defendant is not entitled at this time.

The Government further notes that with respect to the Rule 17(c) requests to AT&T and American Express, there is no specified time period and no explanation as to why the subpoenas are necessary under

Rule 17(c) and not otherwise procured through the discovery process. These requests are inappropriate in light of the Government's extensive discovery disclosures of all of these records.

A "Rule 17(c) subpoena must be able to reasonably specify the information contained or believed to be contained in the documents sought rather than merely hop[e] that something useful will turn up." *United States v. Mendinueta-Ibarro*, 956 F. Supp. 2d 511, 513 (S.D.N.Y. 2013) (citations omitted). For the defendant to meet his burden, he must do more than list general types of information sought. The "specificity and relevance elements require more than the title of a document and conjecture as to its contents." *United States v. Arditti*, 955 F.2d 331, 346 (5th Cir. 1992).

These broad requests are inconsistent with the spirit and purpose of Rule 17(c), and the issuance of these subpoenas without appropriate specificity risks their use as a general discovery device. Furthermore, the issuance of such broad and non-specific subpoenas absent justification may spur additional litigation and ultimately delay these proceedings further.

13

The Third Circuit has stated that a broad request "based solely on the mere hope that some exculpatory material might turn up" does not "justif[y] enforcement of a subpoena under rule 17(c)." *Cuthbertson*, 630 F.2d at 146. If the defendant can identify specific documents he seeks which will assist him in advancing his defense, he may be entitled to use a Rule 17(c) subpoena to obtain them.   The defendant has not identified any specific documents.   Absent such specificity, his subpoena requests are no more than attempts at general discovery, and thus inappropriate under Rule 17.

## IV.  Conclusion

WHEREFORE, for the foregoing reasons, the Government respectfully requests that the court deny the defendant's proposed Rule 17 subpoenas.

                                                Respectfully submitted,

                                                DAVID J. FREED
                                                United States Attorney

                                                /s/ Michelle L. Olshefski
                                                MICHELLE L. OLSHEFSKI
                                                Assistant U.S. Attorney
Date:   December 2, 2019            Atty ID No. PA 79643

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 2nd day of December, 2019, I caused the foregoing "**Government's Brief in Opposition to Defendant's Motion to Authorize Subpoenas Duces Tecum**" to be served upon Patrick Casey, Esquire, counsel of record for the defendant, and that Attorney Casey is a filing user under the ECF system.

/s/ Michelle Olshefski
MICHELLE OLSHEFSKI
Assistant United States Attorney