## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | NO.  3:19-CR-9 |
| | : | |
| BRUCE EVANS, SR. and | : | JUDGE A. RICHARD CAPUTO |
| BRUCE EVANS, JR. | : | |
| | : | ORAL ARGUMENT REQUESTED |

---

### DEFENDANTS BRUCE EVANS, SR.'S REPLY BRIEF IN SUPPORT OF MOTION FOR DISCOVERY AND *BRADY/GIGLIOI* MATERIAL

---

### Government Has No Expert Testimony

The United States has provided the defense with no expert reports or expert witness qualifications. *See* Fed. R. Crim. P. 16(a)(1)(F&G). Therefore, it is assumed the Government has no expert witnesses it intends to present at trial.

### The Criminal Charges and The Exculpatory Value (e.g., Materiality) of The Suppressed Evidence under *Brady*

Bruce Evans Sr., Defendant, (Mr. Evans) is charged in the Indictment with criminally operating the Greenfield Township Sewer Authority (GTSA) sewer plant in violation of National Pollution Discharge Elimination Systems (NPDES) permit.  Mr. Evans is innocent of these charges and asserts that the Government is

suppressing evidence of his innocence.  Specifically, Mr. Evans never operated the GTSA plant, he has never been an operator of any sewer plant, and he never trained, qualified or became licensed by anyone to operate a sewer plant.  Mr. Evans was at all times the business manager which meant that he sent out bills, received customers' payments, and authorized (with sewer Board approval where appropriate) expenses. Joseph Sheposh, David Klepadlo and Thomas Randt have said that Mr. Evans was never the operator. Twenty years of records from the Pennsylvania Department of Environmental Protection (DEP) will confirm Mr. Evans has never been the operator.  Attached hereto are examples of the DEP's clear understanding that Bruce Evans was not the operator.  The first example is a letter from the DEP on July 13, 2011 to "Mr. Bruce Evans, Manager." *See* Exhibit "A" attached.  The second example is a letter from David Klepadlo on February 25, 2008 to the DEP saying, "Please be advised that I will be the Operator of Record for the Greenfield Township Sewer Authorities Waste Water Treatment Plan." *See* Exhibit "B" attached hereto.  The third example is a letter from David Klepadlo of November 28, 2008 to the DEP saying, inter ala, that Joseph Sheposh also will serve as an operator for the GTSA.  *See* Exhibit "C" attached hereto. Evidence that Mr. Evans was not an operator and has no knowledge of the contents of the permit exculpates Mr. Evans since one cannot criminally operate a plant if

2

one does not operate the plant, and one cannot knowingly violate the terms of a permit when one does not know its terms.

The Third Circuit recognized that the "rule laid out in *Brady* requiring disclosure of exculpatory evidence applies both to materials going to the heart of the defendant's guilt or innocence and to materials that might well alter the jury's judgment of a crucial prosecution witness." *United States v. Higgs*, 713 F.2d 39, 42 (3d Cir. 1993).

The government violates its duties under *Brady* if it suppresses evidence that, if disclosed, would have had a reasonable probability of changing the outcome of the proceedings. *United States v. Coppa*, 207 F.3d 132, 144 (2nd Cir. 2001). The prosecutor will have violated a constitutional duty where the prosecutor fails to disclose exculpatory and impeachment material as it denies the defendant the right to a fair trial. *Id.* at 141. The prosecutor has a responsibility to gauge the likely effect of evidence the defendant asserts is exculpatory. *Kyles v. Whitley*, 514 U.S. 419, 437 (1995).

In the case at bar, it behooves the prosecution to provide the defense with the statements requested as they are exculpatory.[1] The production in advance of

---

[1] Unlike in *Higgs*, 713 F.2d at 44-45, where there was concern about the possibility of violence to the witnesses in early disclosure, no such concern exists in the instant matter.

3

trial will avoid delay of trial, and, therefore, the unnecessary exhaustion of valuable judicial resources such as jurors' time.

## Government Must Turn Over *Brady* Material

The Federal Bureau of Investigation (FBI) and Environmental Protection Agency (EPA) conducted a lengthy (several years) investigation of the GTSA, and Mr. Evans in particular, over a period of years.  As the Government investigated several theories of prosecution against Mr. Evans, however, the efforts came up short.  Several of the steps of the Government's investigation created several *Brady*-producing events.  They are explained below.

## Thomas Randt's Exculpatory Statements

First, the Government believed Mr. Evans was accepting bribes in exchange for accepting waste from a fracking hauler.  The Government assumed incorrectly that Mr. Evans accepted fracking water into the GTSA in exchange for cash.  After interviewing the hauler–Thomas Randt–the Government found out that not only was Mr. Evans not taking bribes, he wasn't taking fracking water.  Mr. Evans was taking household waste water–not fracking water–which was permissible for the Authority to accept.  Mr. Evans reported the entire arrangement to GTSA Board, and the GTSA charged fees for accepting this waste.  Mr. Randt was interviewed

4

more than once by the FBI agents in this case.  Mr. Randt affirmatively told the

agents that Mr. Evans never took bribes or anything of value.  Mr. Randt said that

Mr. Evans did nothing illegal with respect to the management of the GSTA.  Mr.

Randt said that Mr. Evans was the manager, not the operator of the GTSA.  Mr.

Randt's statements to the prosecution are not *Jencks*.  Mr. Randt's statements

exculpate Mr. Evans and, therefore, are *Brady* material which should be turned

over to the defense.  The Government's failure to disclose this information is a due

process violation.

## Joseph Sheposh's Exculpatory Statements

Second, the Government believed that Mr. Evans participated in an effort to

conceal the failure of the operator of the GTSA to sample and test the contents of

the GTSA as required by permit.  Instead of catching Mr. Evans falsifying data, the

Government caught Joseph Sheposh doing so.  Importantly, the Government

interviewed Joseph Sheposh and learned that Mr. Evans did not know anything

about the falsification of records or the operator's failure to properly adhere to the

permit.  Mr. Sheposh said that he and Mr. Klepadlo were the operators of the

GTSA, and he said that Mr. Evans was never the operator.  Mr. Sheposh said that

Mr. Evans was the manager for the twenty years of the GTSA's existence.  Mr.

Sheposh's statements to the Government are not *Jencks*. They are exculpatory and are *Brady* material which should be produced to the defense. Failure to disclose this information is a due process violation by the Government.

### David Klepadlo's Exculpatory Statements

Third, the Government went to David Kelpadlo's home and business to execute a search warrant. Upon arrival agents offered to not pursue criminal charges against Mr. Klepadlo if he were willing to conduct a recorded telephone call with Mr. Evans. Mr. Klepadlo refused the agents' demands, and told the agents Mr. Evans had done nothing wrong. Mr. Klepadlo said that Mr. Evans was the manager, never the operator of the GTSA. Mr. Klepadlo's statements to the Government are not *Jencks*. They are exculpatory and are *Brady* material which should be produced to the defense. Failure to disclose this information is a due process violation by the Government.

### Joseph Sheposh's Agreement with The Government

Fourth, Mr. Sheposh has cooperated with the Government in the criminal investigation of the GTSA, Mr. Evans, and Mr. Klepadlo. Mr. Sheposh admitted to falsifying records related to the sampling and testing of the sewer plant. If the Government has offered any assurances of leniency or reached an agreement with

6

Mr. Sheposh regarding non-prosecution, the Government has a duty to disclose to Mr. Evans the bargain and any benefits received by Mr. Sheposh from the Government.

## Records Not Produced

The United States has taken the position that it has produced all of the relevant materials, however, the defense finds a number of records absent. They are as follows:

1.      Photos and a photo log from the day of the inspection on April 24, 2013.

2.      A sample log, sample chain of custody, and results including the samples of the grass from e-coli, and lab analysis reports from samples collected on April 24, 2013.

3.      Inspection reports and an inspector report from the DEP on April 24, 2013.

4.      Any Notice of Violation or follow-up communication confirming the inspection, the results and the corrective actions required related to the inspection on April 24, 2013.

5.     Inspectors' field notes from April 24, 2013 related to the inspection and any follow-up.  This should include, but not be limited to, notes from Thomas Brown, Jeremy Mill and Leonard Schall, each of whom participated in the inspection.

WHEREFORE, the Defendant respectfully requests that its Motion for Discovery and *Brady/Giglio* Material be granted.

Respectfully submitted,

<u>/s/ Patrick A. Casey</u>
Patrick A. Casey
Attorney for Defendant,
Bruce Evans, Sr.

Myers, Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA  18503
(570) 342-6100

Date: January 15, 2020

## CERTIFICATE OF SERVICE

I, Patrick A. Casey, hereby certify that a true and correct copy of the foregoing Reply Brief in Support of Motion for Discovery and *Brady/Giglio* Material was served upon the following counsel of record via the Court's ECF system on this 15th day of January 2020.

> Michelle L. Olshefski
> US Attorney's Office
> P.O. Box 309
> 235 North Washington Avenue
> Scranton, PA 18501
>
> Walter F. Casper, Jr.
> P.O. Box 513
> 35 S. Church Street
> Carbondale, PA 18407

> /s/ Patrick A. Casey