IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | NO. 3:19-CR-9 |
| | : | |
| BRUCE EVANS, SR. and BRUCE EVANS, JR., | : | JUDGE A. RICHARD CAPUTO |
| | : | |
| | : | ORAL ARGUMENT REQUESTED |

**DEFENDANT BRUCE EVANS, SR.'S REPLY BRIEF IN SUPPORT OF
MOTION TO DISMISS THE INDICTMENT OR
MOTION FOR BILL OF PARTICULARS**

## INTRODUCTION

Counts I through IV of the Indictment fail to provide the necessary factual orientation in accord with Federal Rule of Criminal Procedure 7(c) to allow Bruce Evans, Sr. ("Mr. Evans") to prepare this defense. Indeed, despite Mr. Evans' status as simply manager of the Greenfield Township Sewer Authority sewage plant, the Government endeavors to charge him with an operator-like knowledge of its discharges. Moreover, and fundamental to the jurisdiction of the Clean Water Act, the Government also fails at Count I to allege that the pollutant discharge reached "navigable waters of the United States." Filled with facts not contained within the Indictment, the Government's brief in opposition nevertheless fails to resolve these

deficiencies. To aid the Court, Mr. Evans offers the following short reply in support of his Motion to Dismiss.

## ARGUMENT

Federal Rule of Criminal Procedure 12(b)(3)(B)(v) authorizes a defendant to lodge a pretrial challenge for "failure to state an offense" when the Indictment fails to meet the standard of sufficiency set out in Rule 7(c). That Rule requires an indictment to "be a plain, concise, and definite written statement of the essential facts charged." Fed. R. Crim. P. 7(c). An Indictment is sufficient under Rule 7(c) if it: "(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution." *United States v. Willis*, 844 F.3d 155, 161 (3d Cir. 2016) (quoting *United States v. Rankin*, 870 F.2d 109, 112 (3d Cir. 1989)). Indeed, "'[N]o greater specificity than the statutory language is required so long as there is sufficient factual orientation' to permit a defendant to prepare his defense and invoke double jeopardy." *United States v. Huet*, 665 F.3d 588, 595 (3d Cir. 2012) (citations omitted).

The Indictment at Counts I through IV fails to meet even this low standard as necessary facts supporting elements of the crimes are altogether lacking. As noted in Mr. Evans' opening brief, to establish a violation of Section

1319(c)(2)(A), the Government must allege and prove beyond a reasonable doubt that Mr. Evans knowingly (1) discharged, (2) a pollutant, (3) from a point source, (4) into the navigable waters of the United States, (5) without a permit to do so, or in violation of an existing NPDES permit. *See United States v. Wilson*, 133 F.3d 251, 264 (4th Cir. 1997); *United States v. Ahmad*, 101 F.3d 386, 389 (5th Cir. 1997).

Counts I through IV of the Indictment fail to allege the above required elements. First, Count I charges Mr. Evans with violating NPDES Permit PA 0061671, Part C, Special Condition Six by "intentionally pumping the contents of the chlorine contact tanks, including solids and sewage sludge *onto the ground and into the grass*." *See* Indictment ¶ 27 (emphasis added.). *See also* Indictment ¶ 20 (alleging that PADEP personnel observed Mr. Evans, "pumping the contents . . . *onto the ground and into the grass*.")(emphasis added). No mention is made anywhere in the Indictment that any discharge to a water of the United States occurred in connection with this alleged event.

As noted in the Indictment itself at paragraph 21, Special Condition Six, the provision of the permit allegedly to be violated in Count I, "outlines the requirements for the proper collection, handling and disposal of sludges and other

solids," that are removed from the sewage treatment plant. *See* Indictment ¶ 17.[1] Violation of Special Condition Six of this PADEP-issued permit, by its terms, does not require a discharge into the "waters of the United States." *See* footnote 1, below. Rather, it would be based on any violation of Pennsylvania's Solid Waste Management rules—for example, improper disposal of sludge to the ground—as to any solids removed from the treatment plant. The facts in Count I of the Indictment allege only that the sludge and solids removed from treatment plant were dumped on the ground. They do not include any allegation of a discharge to any "waters of the United States."[2]

The jurisdiction of the Clean Water Act—the federal law under which this Indictment is being pursued—is, however, limited to protection of "navigable waters" which are defined in the Clean Water Act as "waters of the United States." 33 U.S.C. § 1362(12); *Rapanos v. United States*, 547 U.S. 715, 732 (2006). The absence of averments indicating discharge into "waters of the United States" is therefore dispositive as to the insufficiency of the charging instrument. In its

---

[1] Special Condition Six provides: "SIX: Collected screenings, slurries, sludges, and other solids shall be handled and disposed of in compliance with 25 Pa, Code, Chapter[s] 75, and in a manner equivalent to the requirements indicated in [Pa. Code] Chapters 271, 273, 275, 283, and 285 (related to permits and requirements for landfilling, land application, incineration, and storage of sewage sludge), Federal Regulation 40 CFR 257, Pennsylvania Clean Streams Law, Pennsylvania Solid Waste Management Act of 1980, and the Federal Clean Water Act and its amendments." NPDES Permit PA 0061671, Part C, Special Conditions.

[2] The events allegedly occurred in the presence of DEP personnel in April 2013. Despite this Pennsylvania DEP never issued even a Notice of Violation to the Greenfield Township Sewer Authority as a result.

Opposition Brief, the Government seems to recognize the problem and never contests that a discharge to a water of the United States associated with the dumping of sludge on the ground would be a required element of its charge in Count I. Gov't Opp. Br. at pp. 5-6. Instead, the Government attempts to remedy this fundamental deficiency in Count I by asserting facts *in its Opposition brief* that are clearly not alleged anywhere *in the Indictment*. For example, the Opposition Brief states: "Pumping of the sludge onto the ground *which flowed into the receiving stream* violated the NPDES Permit, Part C, Special Condition Six, . . ." *See id.* (emphasis added).

Moreover, the Government's brief asserts that "PADEP personnel reported that the untreated contents . . . *ultimately flowed into the discharge channel from the headwall down to the confluence with the unnamed tributary to the Dundaff Creek.*" *Id.* at 5 (emphasis added). Even if these brand new and unsworn assertions that the sludge and solids "flowed" or "ultimately flowed" to a water of the United States could be supported—and Mr. Evans believes they could not be—the asserted flow from the ground (as alleged in the Indictment) to a "water of the United States" is a key factual element for any federal Clean Water Act crime to be

made out in Count I of the Indictment. Because that allegation is not part of the Indictment itself, Count I should be dismissed based on this failure.[3]

Second, in Counts I through IV, the Government charges Mr. Evans with four violations of 33 U.S.C. § 1319(c)(2)(A) stemming from discharges from the GTSA sewage plant on April 24, 2013, October 17, 2017, December 12, 2017, and December 12, 2017, respectively. While not addressed explicitly by the United States Court of Appeals for the Third Circuit, both the Fourth and Fifth Circuit have persuasively found that the *mens rea* within Section 1319(c)(2)(A), "knowingly," applies to each of above elements of the offense. *See United States v. Wilson*, 133 F.3d 251, 264 (4th Cir. 1997); *United States v. Ahmad*, 101 F.3d 386, 389 (5th Cir. 1997). In *United States v. Ahmad*, the Fifth Circuit held that "the phrase 'knowingly violates' in Section 1319(c)(2)(A), when referring to other provisions that define the elements of the offenses Section 1319 creates, should uniformly require knowledge as to each of those elements rather than only one or two." 101 F.3d at 390.

Similarly, the Fourth Circuit, in *United States v. Wilson*, held that "the Clean Water Act . . . requires the government to prove the defendant's knowledge of facts meeting each essential element of the substantive offense, . . . , but need not prove

---

[3] Dismissal should be with prejudice as Count I relates to conduct on April 24, 2013, and the five-year state of limitations, tolled prior to Indictment pursuant to Tolling Agreements between the parties, has now since passed. 18 U.S.C. § 3282(a).

that the defendant knew his conduct to be illegal." 133 F.3d at 262 (internal citations omitted). Importantly, the *Wilson* Court addressed squarely, and dispelled, the argument advanced by the Government that Mr. Evans is requesting that it allege that he knew his conduct to be illegal. 133 F.3d at 262 (internal citations omitted). Speaking to the distinction between knowledge of illegality and knowledge of the essential facts of the crime, the *Wilson* Court wrote that:

> The ready alternative interpretation is that Congress intended that the defendant have knowledge of each of the elements constituting the proscribed conduct even if he were unaware of their legal significance. This interpretation would not carry with it the corollary that the defendant's ignorance of his conduct's illegality provides him a defense, but would afford a defense for a mistake of fact.

*Id.* Based on this holding, the *Wilson* Court observed that "if a defendant thought he was discharging water when he was in fact discharging gasoline, he would not be guilty of knowingly violating the act which prohibits the discharge of pollutants." *Id.* (citations omitted).

The Indictment, however, fails to allege this required *mens rea*. For example, at Count I, the Indictment fails to allege that Mr. Evans knew or even reasonably could have known that his discharge of solids and sludge onto the ground and grass near the treatment plant—clearly not, in themselves waters of the United States—could constitute a discharge to a receiving stream. Similarly, at Count II, the

Indictment is silent as to how non-operator Mr. Evans, who is not alleged to have even been present during an October 17, 2017 routine inspection, *knowingly* discharged the listed materials for that date. *See Bryan v. United States*, 524 U.S. 184, 193 (1998) ("[T]he term 'knowingly' merely requires proof of knowledge of the facts that constitute the offense."); *see also United States v. West Indies Transport, Inc.*, 127 F.3d 299, 310 (3d Cir. 1997) (affirming a district court's jury instruction that "[a]n act is done knowingly if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason" for a count under 33 U.S.C. § 1319(c)(2)(A)).

Finally, the Indictment does not, and cannot, allege that non-operator Mr. Evans "correctly identified the substance[s]" that were being discharged at Counts III and IV, and that he knew that said discharges would be a violation of the carbonaceous biochemical oxygen demand (CBOD5), Total Suspended Solids (TSS), and Fecal Coliform limits in the permit. *See Wilson*, 133 F.3d at 264 (holding that, in order to establish a felony violation of the Clean Water Act, the Government must prove that the "defendant correctly identified the substance he was discharging"); *United States v. Atlantic States Cast Iron Pipe Co.*, No. 03-852, 2007 WL 2282514, at *39 (D.N.J. Aug. 2, 2007)[4] (noting that, at the time of trial,

---

[4] Pursuant to Local Rule 7.8(a), the unpublished decisions cited herein are reproduced in the attached Appendix.

the court had "impos[ed] on the government the burden of proving that the individual defendant knew the fact that the discharge or conduct was in violation of the authorized limits of the water or air permits."). Indeed, the Indictment does not allege how Mr. Evans knew the existence of and limits for "pollutants" alleged to have been discharged on December 12, 2017.

In its Opposition brief, the Government questions why Mr. Evans involved himself in the operations of the GTSA sewage plant despite not being certified as a wastewater operator by the Pennsylvania Department of Environmental Protection. This argument is a red herring. Mr. Evans did not serve as operator during that time.[5] Moreover, Mr. Evans is charged at Counts I through IV with failure to operate and maintain in violation of a CWA permit and knowing discharge in violation of same. He is not charged with operation of the facility without a permit.

Third, and in the event the Court declines to dismiss Counts I through IV on the basis advanced above, Mr. Evans seeks a bill of particulars on those counts. The United States Court of Appeals for the Third Circuit has explained that a motion for a bill of particulars should be granted "whenever an indictment's failure to provide factual or legal information significantly impairs the defendant's ability

---

[5] The certified operators of the GTSA sewage plant during the relevant time period were Joseph Sheposh and David Klepadlo.

to prepare his defense or is likely to lead to prejudicial surprise at trial." *United States v. Rosa*, 891 F.2d 1063, 1066 (3d Cir. 1989). The decision to grant a bill of particulars "lie[s] within the discretion of the trial court." *United States v. Armocida*, 515 F.2d 49, 54 (3d Cir. 1975).

As noted above, the Government failed in the Indictment to allege (1) at Count I, that the alleged discharge reached "waters of the United States," and (2) at Counts I through IV, that Mr. Evans, as non-operator of the GTSA plant, knowingly discharged the stated pollutants in violation of an NPDES permit. This failure to provide factual or legal information "significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial." *United States v. Rosa*, 891 F.2d 1063, 1066 (3d Cir. 1989). Mr. Evans therefore requests that this Court order the prosecution to file a bill of particulars describing the offenses contained in Counts I through IV. Specifically, for each alleged offense, the Government should provide:

(a) the navigable "water of the United States" to which the alleged discharge at Count 1 reached and any supporting documentation;

(b) how Mr. Evans, as an uncertified non-operator, knew the GTSA plant had discharged (or on October 17. 2017 was discharging) the materials listed in Count 2, or, as to Counts 3 and 4, how he knew what the terms and limits for

CBOD5, Total Suspended Solids, and fecal coliform limits were in relation to discharges from the plant; and

  (c) how Mr. Evans, as an uncertified non-operator, knew that the terms of the NPDES permit, including those setting requirements for the handling of partially treated solids in compliance with the law (Count 1), the presence of the materials alleged in the outfall at Count 2, and the limits imposed by the permit for CBOD5, Total Suspended Solids, and fecal coliform at Counts 3 and 4, were violated by these discharges.

  (d) how Mr. Evans Sr. knew anything about the NPDES permit terms.

## **CONCLUSION**

For the reasons stated above, Defendant Bruce Evans Sr. respectfully requests that the Court grant his motion to dismiss the indictment at Counts I through IV.

In the alternative, Mr. Evans respectfully requests that the Government issue a bill of particulars as outlined above.

                Respectfully submitted,

                /s/ Patrick A. Casey
                Patrick A. Casey
                Richard L. Armezzani

                Attorney for Defendant,
                Bruce Evans, Sr.

Myers, Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA  18503
(570) 342-6100

Date:   January 15, 2020

## CERTIFICATE OF SERVICE

I, Patrick A. Casey, hereby certify that a true and correct copy of the foregoing Reply Brief in Support of Motion to Dismiss the Indictment or Motion for a Bill of Particulars was served upon the following counsel of record via the Court's ECF system on this 15th day of January, 2020:

>Michelle L. Olshefski, Esquire
>U.S. Attorney's Office
>P.O. Box 309
>235 North Washington Avenue
>Scranton, PA 18501
>
>Walter F. Casper, Jr., Esquire
>P.O. Box 513
>35 S. Church Street
>Carbondale, PA 18407

/s/ Patrick A. Casey
Patrick A. Casey