**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | | **3:19-CR-009** |
| | : | |
| **v.** | | |
| | : | **(JUDGE MANNION)** |
| **BRUCE EVANS, and** | : | |
| **BRUCE EVANS, JR.,** | | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

I.    **BACKGROUND**[1]

On January 8, 2019, a 13-count Indictment was filed against defendant Bruce Evans, Sr., ("Evans Sr."). His son, Bruce Evans, Jr., (Evans Jr."), was also charged in Counts 2-4 of the Indictment. (Doc. 1).

On May 28, 2020, a Superseding Indictment was filed against both defendants. (Doc. 62). The Superseding Indictment contains 36 Counts, namely: (1) three counts under 33 U.S.C. §1319(c)(2)(A) for failure to operate and maintain in violation of a Clean Water Act permit; (2) two counts under 33 U.S.C. §1319(c)(2)(A) for discharge in violation of a Clean Water Act permit; (3) one count under 33 U.S.C. §1319(c)(2)(A) for failure to notify

---

[1] This case was originally assigned to the Honorable A. Richard Caputo. This case was verbally reassigned to the undersigned after Judge Caputo passed away.

1

PA Department of Environmental Protection ("PADEP") in violation of CWA permit; (4) eight counts under 33 U.S.C. §1319(c)(2)(A) for bypassing the treatment system in violation of a CWA permit; (5) nine counts under 33 U.S.C. §1319(c)(2)(A) for failure to notify PADEP of bypasses and sewage overflows in violation of a CWA permit; (6) eight counts under 18 U.S.C. §1343 for wire fraud; (7) four counts under 18 U.S.C. §1702 obstruction of correspondence; and (8) one count of false statements in violation of the CWA under 33 U.S.C. §1319(c)(4). Evans Sr. is charged in 35 of the Counts (i.e., all Counts except for Count 6), while Evans Jr. is only charged in Counts 2-5 and 6. In Count 6, Evans Jr. is charged with false statements in violation of the CWA.

On October 16, 2019, and February 8, 2021, defendants Evans Jr., and Evans Sr., respectively, filed motions to dismiss various counts against them contained in the original Indictment and the Superseding Indictment under Fed.R.Crim.P. 7(c) and 12(b)(3).[2] (Docs. 48 & 80). Defendant Evans

---

[2]Evans Jr. filed his motion to dismiss Counts 2 through 4 of the original Indictment. (Doc. 1). Subsequently, the Superseding Indictment was filed against both defendants on May 28, 2020. (Doc. 62). Nonetheless, the court did not require Evans Jr. to re-file his motion since the charges in both indictments in Counts 2-4 against him are essentially the same. The Superseding Indictment also adds two new charges against Evans Jr., one under 33 U.S.C. §1319(c)(2)(A) for discharge in violation of a Clean Water Act permit, Count 5, and one charge of false statements in violation of CWA under 33 U.S.C. §1319(c)(4), Count 6. As such, Evans Jr. is construed as moving to dismiss Counts 2-5 against him in the Superseding Indictment, and his arguments for dismissal will be addressed in the context of the

Jr. moves the court to dismiss Counts 2-5 against him claiming that they fail to allege essential elements of the offenses charged. Specifically, in Counts 2 and 3 Evans Jr. is charged with failure to operate and maintain in violation of a Clean Water Act ("CWA") permit under 33 U.S.C. §1319(c)(2)(A), and in Counts 4 and 5, he is charged with discharge in violation of a CWA permit under 33 U.S.C. §1319(c)(2)(A).

As alternate relief in his motion, Evans Jr. seeks the court to direct the government to file a bill of particulars under Rule 7(f) claiming that the Counts against him fail to provide sufficient factual or legal information for him to prepare his defense to them.

Evans Sr. moves to dismiss Counts 1 through 5 and Count 7 of the Superseding Indictment which charge him with the following: failure to operate and maintain in violation of a CWA permit under 33 U.S.C. §1319(c)(2)(A), Counts 1-3; discharge in violation of a CWA permit under 33 U.S.C. §1319(c)(2)(A), Counts 4 and 5; and failure to notify PADEP of wastewater overflows in violation of a CWA permit under 33 U.S.C. §1319(c)(2)(A), Count 7.

---

subsequent indictment. Evans Jr. did not move to dismiss Count 6 of the Superseding Indictment.

Evans Sr. had also filed a motion to dismiss Counts 1-4 of the original indictment against him, (Doc. 40), however he filed a new motion to dismiss after the Superseding Indictment was filed, (Doc. 80), which rendered his original motion moot. Subsequently, Evans Jr. filed a motion to join his father's motion to dismiss, which was granted by the court on February 17, 2021. (Doc. 85).

The motions of both defendants, (Docs. 48 & 80), have been fully briefed by the parties and they are ripe for the court's decision. (Docs. 49, 57, 89, 93 & 99).[3]

The FPTC is presently set for August 17, 2021, and the trial date is August 30, 2021. (Doc. 102).

## II.     STANDARD

"An Indictment 'must be a plain, concise, and definite written statement of the essential facts constituting the offense charged' and include the 'provision of law that the defendant is alleged to have violated.'" U.S. v. Wood, 2021 WL 3048448, *9 (D. De. July 20, 2021) (citing Fed. R. Crim. P. 7(c)(1)).

"An indictment is an accusation only, and its purpose is to identify the defendant's alleged offense ... and fully inform the accused of the nature of the charges so as to enable him to prepare any defense he might have." U.S. v. Manganas, 2017 WL 2547310, *2 (M.D. Pa. June 13, 2017) (quoting United States v. Stansfield, 171 F.3d 806, 812 (3d Cir. 1999). "A defendant, however, may move to dismiss an indictment based on defects in the indictment, lack of jurisdiction, or failure to charge an offense." Id. (citing Fed. R. Crim. P. 12(b)(2), (3)(B)).

---

[3]Also pending are discovery motions filed Evans Jr., (Docs. 38, 46 & 47), as well as a motion to authorize a subpoena duces tecum to the PADEP under Rule 17(c) filed by Evans Sr., (Doc. 79). The court will decide these motions in a separate Memorandum.

"An indictment is sufficient 'if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge [against him,] and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *Id*. (citing Hamling v. United States, 418 U.S. 87, 117 (1974); accord United States v. Cefaratti, 221 F.3d 502, 507 (3d Cir. 2000) ("An indictment ... to be sufficient must contain all essential elements of the charged offense.")). "However, an indictment 'fails to state an offense if the specific facts alleged in the charging document fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation.'" *Id*. (quoting United States v. Panarella, 277 F.3d 678, 685 (3d Cir. 2002)). "In other words, the facts in the indictment must satisfy the elements of the underlying criminal statute." *Id*. (citation omitted). *See also* United States v. Rankin, 870 F.2d 109, 112 (3d Cir. 1989) ("[N]o greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution.").

As the court in <u>Wood</u>, 2021 WL 3048448, *9,  explained:

"It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished.'" Hamling v. United States, 418 U.S. 87, 117 (1974) [citation omitted]. "The test is not whether the indictment could have been framed in a more satisfactory manner but whether it conforms to the minimal constitutional standards." United States v. Olatunji, 872 F.2d 1161, 1168 (3d Cir. 1989) (internal quotations and citation omitted). An

indictment that tracks the language of the statute and is supplemented by specific allegations of the activity giving rise to the charge is sufficient. *See id.*

Additionally, "[i]n considering a defense motion to dismiss an indictment, the district court [must] accept[ ] as true the factual allegations set forth in the indictment." United States v. Bergrin, 650 F.3d 257, 265 (3d Cir. 2011) (citation omitted). "If the allegations in the indictment do not suffice to state an offense, Rule 12(b)(3)(B) authorizes dismissal; however, "dismissal[] may not be predicated upon the insufficiency of the evidence to prove the indictment's charges." Manganas, 2017 WL 2547310, *2 (citing United States v. DeLaurentis, 230 F.3d 659, 660-61 (3d Cir. 2000) ("Unless there is a stipulated record, or unless immunity issues are implicated, a pretrial motion to dismiss an indictment is not a permissible vehicle for addressing the sufficiency of the government's evidence.")).

## III.  DISCUSSION[4]

This court has jurisdiction under 18 U.S.C. §3231.

As mentioned the defendants move to dismiss Count 1, (Evans Sr. only), and Counts 2 through 5, (both defendants), of the Superseding Indictment which charge them with failure to operate and maintain in violation of a CWA permit under 33 U.S.C. §1319(c)(2)(A), Counts 1-3, and unlawful

---

[4]The court notes that since the complete factual background of this case is detailed in the defendants' briefs, and in the government's opposition briefs, (Docs. 57 & 93), it will not be fully repeated herein.

discharge of wastewater in violation of a CWA permit under 33 U.S.C. §1319(c)(2)(A), Counts 4 and 5. Evans Sr. also moves to dismiss Count 7. Further, Evans Jr. claims that he is entitled to a bill of particulars if his motion to dismiss is not granted. The court will first address Counts 1-3.

### 1.  Counts 1-3, CWA violations under 33 U.S.C. §1319(c)(2)(A)

Section 1319(c)(2) provides, in pertinent part as follows:

> (2) Knowing violations. Any person who—
>> (A) knowingly violates ... [this Act, including §1311] ..., or any permit condition ..., or any requirement imposed in a pretreatment program ... or in a permit issued under [this Act] ... by the Secretary of the Army or by a State….

"In 1972, Congress passed the Clean Water Act, which, among other things, criminalizes the discharge of pollutants into 'navigable waters' without an appropriate permit." U.S. v. Lucero, 989 F.3d 1088, 1091 (9th Cir. 2021) (citing 33 U.S.C. §§1311(a), 1362(12), 1344). Moreover, as the Ninth Circuit in Lucero, id. at 1095, explained:

> In enacting the Clean Water Act, Congress wanted to pass the broadest possible protections against water pollution. *See* United States v. Riverside Bayview Homes, Inc., 474 U.S. 121, 133, 106 S.Ct. 455, 88 L.Ed.2d 419 (1985). The Act's stated objective is "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. §1251(a). The Act is "an all-encompassing program of water pollution regulation." Milwaukee v. Illinois, 451 U.S. 304, 318, 101 S.Ct. 1784, 68 L.Ed.2d 114 (1981). And the phrase "into water" supports its statutory objective by broadly proscribing the dumping of pollutants "into" any "water" from any conveyance. *See*

Riverside Bayview, 474 U.S. at 133, 106 S.Ct. 455 (holding that "Congress chose to define the waters covered by the Act broadly.").

"Section 1319(c) creates criminal penalties for violation of the Clean Water Act." Lucero, 989 F.3d at 1093 (citing 33 U.S.C. §1319(c)). "In particular, §1319(c)(2)(A) makes it a felony for anyone to 'knowingly violate[] section 1311' of the Act." Id. (citing §1319(c)(2)(A)). "Section 1311, in turn, provides that 'the discharge of any pollutant by any person shall be unlawful' without a permit." Id. (citing §1311(a)). "When the word 'knowingly' precedes the verb 'violate,' it applies to the verb's direct object, which in this case is §1311. Id. (citing Rehaif v. United States, —— U.S. ——, 139 S. Ct. 2191, 2195, 204 L.Ed.2d 594 (2019).

Thus, Section 1311 requires persons to obtain a CWA National Pollutant Discharge Elimination System ("NPDES") permit in order to discharge any pollutant from any point source into waters of the United States.

The phrase "discharge of a pollutant" is defined as "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. §1362(12).

The word "pollutant" is defined as "dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water." Id. §1362(6). The term "navigable waters" is defined as "waters of the United States." Id. at 1094 (citing

8

§1362(7)). "Point source" is defined as "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, ... from which pollutants are or may be discharged." *Id.* (citing §1362(14)).

"Stringing together these definitions gives us a statute that prohibits any person from 'knowingly' engaging in the 'addition of any' listed substance 'discharged into water' 'to waters of the United States' 'from any point source.'" *Id*. at 1094 (citing 33 U.S.C. §§1319(c)(2)(A), 1311(a), 1362(6), (7), (12). "The phrase 'to waters of the United States,' …, is a jurisdictional element, connecting the Clean Water Act to Congress's Commerce Clause powers." *Id.* at 1095.

Defendants contend that Counts 1-3 should be dismissed under Rules 7(c) and 12(b)(3)(B)(v) for failure to allege essential elements of the offense of failure to operate and maintain in violation of a CWA permit under 33 U.S.C. §1319(c)(2)(A). The government responds that Counts 1-3 properly state CWA offenses under Federal Rule of Criminal Procedure 7(c). These Counts charge defendants with knowingly violating the Greenfield Township Sewer Authority ("GTSA") NPDES permit by failing to properly operate and maintain the GTSA treatment facility and, by allowing wastewater and various pollutants and materials to be discharged onto the ground and into a tributary, on April 24, 2013 (Count 1) and October 17, 2017 (Counts 2-3).

9

Evans Jr. argues that the indictment should be dismissed since it does not prove that he acted knowingly, and that the indictment fails to allege that he was an operator of the GTSA.

Evans Sr. also challenges the knowing element of the indictment regarding Counts 1-3, and he also contends that the Count 1 CWA charge fails to meet the "navigable waters" element of the statute.

Here, the 52-page Superseding Indictment is very detailed, and it clearly complies with Rule 7(c)(1). (Doc. 62). The Superseding Indictment closely follows the language of the statute §1319(c)(2)(A) and contains more than sufficient specific allegations of the alleged unlawful activity of both defendants that gave rise to the CWA violations charged in Counts 1-3. *See* Olatunji, 872 F.2d at 1168. As the government points out, "Section 1319(c)(2)A) of the CWA makes it unlawful for <u>any</u> <u>person</u> to, among other things, knowingly violate and cause a violation of a permit, which is what is alleged in Counts 2 through 4 of the indictment. (Doc. 57 at 12) (emphasis original).

The Superseding Indictment alleges that Evans Jr. was an employee of both Greenfield Township and GTSA and that he "submitted a notarized application of PADEP for certification as a wastewater treatment plant operator on or about June 29, 2017." It also stated that "PADEP certified [Evans Jr.] as a wastewater operator on or about August 17, 2017." Further, it is alleged that Evans Sr. sent his son Evans Jr.'s wastewater operator training certification to PADEP on September 26, 2017. (Doc. 62 at 3-4).

Thus, there is no merit to Evans Jr.'s claim that the indictment fails to allege that he was an operator of the GTSA.

The Superseding Indictment also satisfies the "knowing" element of the CWA. Recently, in Lucero, 989 F.3d at 1096, the Ninth Circuit held that "for a defendant to 'knowingly' add a pollutant in violation of the Act, he must know that he discharged an enumerated substance from a conveyance, and that the substance was 'discharged into water'", and held that "[t]his interpretation also accords with the longstanding presumption that criminal statutes require knowledge of the statutory elements that 'criminalize otherwise innocent conduct.'" (citing Rehaif, 139 S. Ct. at 2195). As such, "requiring knowledge of the defendant's dumping of the substance 'into water' from a point source ensures that he knows he's committing the crime targeted by Congress—water pollution." Id. at 1096-97.

Moreover, the CWA's felony provision, which "require[es] knowledge of the pollutant being 'discharged into water,' such as ponds, lakes, streams," and in "[c]onstruing 'water' in context with the Act's other elements, especially the requirement that any discharge be from a 'point source,' ensures that the CWA criminalizes only those activities falling within 'reasonable notion[s] of water pollution.'" Lucero, 989 F.3d at 1098. Thus, "[a] defendant only violates the Act if he knowingly discharges a pollutant into water from a conveyance, …, [and] [t]his effectively requires that the 'water' involved be an equivalent to a body of water." Id. Also, as stated, "the knowledge requirement imposed by §1319(c)(2)(A) compels the government

11

to prove [] that a defendant knew he discharged a substance [not into "waters of the United States"] but "into water." *Id*. at 1097.

In Counts 2-3, as the government states, (Doc. 57 at 12-13), both defendants are:

> charged with violating the GTSA permit issued under 33 U.S.C. §1342 by knowingly allowing waste materials, including paper and/or plastic, partially treated sewage and sewage solids..... to not be properly treated and to accumulate below the outfall of the sewage treatment plant in the unnamed tributary (Count 2); by knowingly discharging pollutants, that is, CBOD 5 and Total Suspended Solids, in excess of the NPDES permit limits for those pollutants into the unnamed tributary to Dundaff Creek (Count 3).

Moreover, Counts 2-3 of the Superseding Indictment include the dates and locations of the offenses, and alleges that defendants "knowingly violated [GTSA NPDES] Permit conditions by failing to properly supervise, operate and maintain the GTSA treatment facility by knowingly allowing waste materials, …, to not be properly treat and to accumulate below the outfall of the sewage treatment plant in the unnamed tributary, …"

These allegations in Counts 2-3 are "sufficient to inform Defendant[s] of the nature of the facts and circumstances surrounding the offense[s] with which [they] [are] charged", and "Defendant[s] [are] apprised of what [they] must be prepared to defend and capable of determining to what extent [they] [can] invoke double jeopardy." Wood, 2021 WL 3048448, *10. In fact, the Superseding Indictment contains detailed allegations in addition to the statutory language, such as information on the conduct of each defendant,

12

that lead to them being charged with violating §1319(c)(2)(A), and which gave defendants proper notice.

In this case, both defendants are charged with felony, or "knowing," violations of the CWA, 33 U.S.C. §1319(c)(2)(A). (Counts 1-3). In U.S. v. W.Indies, 127 F.3d 299, 309-10 (3d Cir. 1997), the Third Circuit stated that "33 U.S.C. §1319(c)(2)(A) establishes criminal penalties for anyone who "knowingly" violates 33 U.S.C. §1311", and in the context of the CWA, explained that "[a]n act is done knowingly if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason." See also United States v. Flores, 454 F.3d 149, 160–61 (3d Cir. 2006) (Third Circuit approved of similar "knowing" jury instruction which also included language that "[t]he purpose of adding the word knowingly ... is to insure that no one will be convicted for an act done because of mistake, accident, or other innocent reasons").

The allegations contained in Counts 2-3 state the *mens rea* requirement found in 33 U.S.C. §1311, and they satisfy the Third Circuit standard regarding use of the word "knowing" for purposes of charged CWA felony violations. *See* Lucero, 989 F.3d at 1097 ("[T]he government need not prove that the defendant knew he discharged the pollutant in 'to waters of the United States.'" "Instead, the knowledge requirement imposed by §1319(c)(2)(A) compels the government to prove only that a defendant knew he discharged a substance 'into water.'").

13

Thus, the motions to dismiss of both defendants with respect to Counts 2-3 of the Superseding Indictment will be denied since they allege the essential elements of the crimes charged.

Evans Sr. also argues that Count 1, which is only against him, should be dismissed for failing to allege a discharge into "navigable waters" as required by the CWA. Count 1 states the date and location of the offense against Evans Sr., and alleges that defendant "knowingly violated and caused the violation of a [GTSA NPDES Permit condition], …, by failing to properly supervise, operate and maintain the GTSA wastewater treatment facility by intentionally pumping the contents of the chlorine contact tank, including solids and sewage sludge, onto the ground and into the grass, …" (Doc. 62 at 15-16). In particular, Count 1 charges Evans Sr. with violating GTSA NPDES Permit PA 0061671, Part C, Special Condition Six.[5] However, he points out that Count 1 fails to allege that he discharged any pollutants into any navigable waters or waters of the United States.

---

[5]Special Condition Six provides in pertinent part:

Collected screenings, slurries, sludges, and other solids shall be handled and disposed of in compliance with 25 Pa. Code, Chapters 75, and in a manner equivalent to the requirements indicated in Chapters 271, 273, 275, 283, and 285 (related to permits and requirements for landfilling, land application, incineration, and storage of sewage sludge), Federal Regulation 40 CFR 257, Pennsylvania Clean Streams Law, Pennsylvania Solid Waste Management Act of 1980, and the Federal Clean Water Act and its amendments.

The government, (Doc. 93 at 11), responds that "proving that a defendant violated a permit condition or requirements governing other aspects of a sewage treatment plant's operation, such as proper operation and maintenance, does not require proof of a discharge into a WOTUS ["waters of the United States"]." The government contends that "[i]t merely requires that the Government prove that a properly issued NPDES permit existed at the time of the charged conduct, and that a defendant knowingly violated a specific condition or requirement contained in that permit." Further, the government asserts that "NPDES permits contain a variety of permit conditions and requirements … [and] [t]hese conditions and requirements include, but are not limited to, requiring that the plant be maintained and operated properly (Counts 1 through 3)." As such, the government states that Count 1 charges Evans Sr. with knowingly violating a specific permit condition contained in the GTSA NPDES permit by allegedly pumping the contents of a chlorine contact tank, including solids and sewage sludge, on the ground during its cleaning was a violation of permit conditions, particularly since "the tank was, at one time, an integral part of the plant's disinfection system used to treat wastewater prior to its discharge into the stream."

Evans Sr. also argues that Count 1 fails to allege that he, as a non-operator, was familiar with the terms of the NPDES permit so that he would know that dumping sewer sludge onto the ground was a violation of Condition Six of the permit.

The court will deny Evans Sr.'s motion to dismiss Count 1 since he was charged with violating §1319(c)(2)(A), which makes it "a felony to knowingly violate 'any permit condition or limitation implementing' the CWA." U.S. v. Pruett, 681 F.3d 232, 239 (5th Cir. 2012). The background section of the Superseding Indictment, paragraphs 1 through 35 which are incorporated by reference into Counts 1-5, sufficiently states Evans Sr.'s extensive involvement with the GTSA dating back to his appointment to the Board and his being hired as the manager in 1996. He then served on the Board and worked as manager of the GTSA until he was terminated in February 2018. Thus, even though Evans Sr. was not the operator, as manager it is alleged in the indictment that he was "the GTSA official responsible for overseeing the operations of the Authority and reporting to the [GTSA Board]." It also alleged that Evans Sr. was "the GTSA official who dealt with the [engineering and environmental] contractor on a day-to-day basis for approximately 26 years" and that he "also dealt regularly with the [PADEP]." It is further alleged that Evans Sr. had been involved, on behalf of the GTSA, in obtaining the NPDES Permits from the PADEP, including the May 2009 Permit. Further, he also signed the renewal of the NPDES Permit on behalf of the GTSA in May of 2013. Thus, it is alleged based on his long history with the GTSA that Evans Sr. would know the Conditions of the NPDES Permit, including Six.

Additionally, the activity alleged by Evans Sr. in Count 1 of pumping sewage sludge onto the ground and grass clearly would constitute a violation

of permit Condition Six. Simply stated, Count 1 is sufficient since it alleges that Evans Sr. knowingly violated a NPDES permit condition by failing to dispose of sewer sludge properly, even though it does not allege that he discharged any pollutant into water. *See id.* at 240 (Fifth Circuit held that defendant's intentional failure to provide inspectors with access to his records which was a required condition of his NPDES permits constituted a violation of [§1319(c)(2)(A)](#)).

### 2. Counts 4 and 5, unlawful discharge of wastewater in violation of a CWA permit under 33 U.S.C. §1319(c)(2)(A)

Next, both defendants move to dismiss Counts 4 and 5 charging them with unlawful discharge of wastewater in violation of a CWA permit under 33 U.S.C. §1319(c)(2)(A). Evans Sr. contends that the Superseding Indictment does not allege, based on his role at the GTSA as an uncertified, non-operator, that he "'correctly identified the substance[s]' that were being discharged at Counts [4] and [5], and that he knew that said discharges would be a violation of the carbonaceous biochemical oxygen demand (CBOD5), Total Suspended Solids (TSS), and Fecal Coliform limits in the permit." He also states that such violations could not have been confirmed without laboratory results. Evans Sr. contends that there are no allegations that, as non-operator, he knew that these levels in the discharge would exceed the terms of the NPDES permit. He further states that these Counts fail to allege how he knew the existence and limits for "pollutants" alleged to

17

have been discharged on December 12, 2017 (i.e., the date that the federal search warrant was executed at the GTSA).

Evans Jr. argues that in Counts 2-4 the government fails to allege that, as a non-operator, he knew the substances of the pollutant discharges and that knew that the discharges would violate the NPDES Permit. At the time Evans Jr. filed his brief in support of his motion to dismiss, (Doc. 49 at 14), the government had not yet filed the Superseding Indictment. Thus, Evans Jr.'s contention that the original indictment failed to allege that he was the operator of the GTSA is moot since the Superseding Indictment states that he was certified by PADEP as a wastewater operator of the GTSA in August 2017. As such, Evans Jr. was an operator during the relevant times for the offenses charged in Counts 2-4, and as an operator, the government charges that he should have known that the pollutants specified in these Counts that were discharged were in excess of the NPDES Permit for the GTSA.

Further, Counts 4-5 charge that both defendants, on specific dates, knowingly violated specific NPDES Permit conditions and they identify the relevant pollutants and permit conditions. Based on the roles of both defendants as well as the alleged personal involvement of both defendants with the charged CWA violations, detailed with great specificity in the Superseding Indictment, (Doc. 62 at 1-15), the court finds no merit to the arguments raised by defendants with respect to Counts 4-5.

18

Also, as the government states, "GTSA's permit contains numerical limitations concerning the type, quality and concentrations of pollutants which may be discharged legally into the unnamed tributary, and sets forth a variety of narrative requirements involving operation and maintenance, compliance monitoring, and reporting requirements." (Doc. 93 at 6 citing Doc. 62 at ¶ 25). In Counts 4-5, both defendants are charged with "knowingly violating numerical and narrative CSA permit conditions involving the operation and maintenance of the plant, discharges into the stream, bypassing the sewage system, and failing to notify PADEP concerning a new source of wastewater." (Id. at 6-7). These allegations, combined with the lengthy background stated in the Superseding Indictment, are sufficient to defeat defendants' motions to dismiss.

Further, insofar as defendants seemingly contend that the government will not be able to prove that they acted knowingly, (i.e., proof of knowledge of the facts that constitute the offenses), and thus they cannot be convicted of violating the CWA, this will be a matter for the jury to determine at trial based on the evidence presented, including evidence regarding Evans Sr.'s long history and experience with the GTSA as well as the roles of both defendants at the GTSA, including Evans Jr.'s stated role as a wastewater operator beginning in August 2017. In fact, Evans Jr. was the operator of the GTSA and Evans Sr. was on the GTSA Board and was the manager of the GTSA at the time the federal search warrant was executed.

Thus, the motions of both defendants to dismiss Counts 4-5 of the Superseding Indictment will be denied. *See* Manganas, 2017 WL 2547310, *4 (Court denied motion to dismiss indictment finding that it sufficiently charged the CWA counts since it identified "the type of pollutants discharged, point sources, and date ranges of the discharging activity", and it "clearly identifies the statute Defendants are charged with violating, provides the elements of the offense by tracking the statutory language, alleges that Defendants acted "knowingly," and specifies a time period for each CWA count.").

### 3. Bill of Particular for Evans Jr. Regarding Counts 2-4

Evans Jr. argues that he is entitled to a Bill of Particulars under Fed.R.Crim.P. 7(f) with respect to Counts 2-4 since they fail to provide him with enough factual or legal information for him to prepare his defense to the charges contained therein. He raises specific requests for particulars he requests be provided to him by the government based on the charges against him in the original indictment. Evans Jr.'s alternate motion for a bill of particulars was contained in his motion to dismiss the original indictment, (Doc. 48), which was filed before the Superseding Indictment was filed. The government's opposition brief to Evans Jr.'s motion was also filed before it filed the Superseding Indictment. (Doc. 57).

Rule 7(f) of the Federal Rules of Criminal Procedure governs a defendant's request for a bill of particulars and provides that:

20

[t]he court may direct the government to file a bill of particulars. The defendant may move for a bill of particulars before or within 14 days after arraignment or at a later time if the court permits. The government may amend a bill of particulars subject to such conditions as justice requires.

As the court in U.S. v. Manfredi, 628 F.Supp.2d 608, 634 (W.D. Pa. 2009), explained:

A bill of particulars is akin to an indictment in that both are designed to limit the government's case. United States v. Smith, 776 F.2d 1104, 1111 (3d Cir. 1985). It is not designed, however, to provide a defendant with the "fruits of the government's case." Id. Therefore, a defendant may not use a bill of particulars as a wholesale discovery tool, though a defendant may not be denied legitimate information simply because that information would divulge government witnesses or details of the government's evidence. Addonizio, 451 F.2d at 64. However, where a defendant has access to information being relied upon by the government to construct its case, the case for granting a bill of particulars is significantly weakened. Urban, 404 F.3d at 772 (3d Cir. 2005).

Granting a motion for a bill of particulars is a discretionary matter for this Court. Id. The Court is to "balance the defendant's interest in securing information concerning the government's case [with] other countervailing considerations which may result from forcing the government to commit itself to a specific version of the facts before it is in a position to do so." United States v. Rosa, 891 F.2d 1063, 1067 (3d Cir. 1989). A bill of particulars should be ordered where the indictment "significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial." Id. at 1066. An indictment is considered sufficient if it substantially follows the language of the criminal statute, so long as it is not too general as to prejudice a defendant in preparing his defense or endanger his constitutional guarantee against double jeopardy. United States v. Eufrasio, 935 F.2d 553, 575 (3d Cir. 1991).

In short, since the 52-page Superseding Indictment, viewed in its entirety, contains more than enough factual allegations to put both defendants on notice of the charges against them, contains charging paragraphs that track the language of 33 U.S.C. §1319(c)(2)(A), and since the government represents that it has now provided "voluminous discovery" to defendants, which is detailed in its briefs, (*see, eg*., Doc. 57 at 21-22), Evans Jr.'s alternate request for a bill of particulars will be denied. *See* Manfredi, 628 F.Supp.2d at 638-39.

### 4. Count 7, Failure to Notify PADEP regarding the volume of hauled-in wastewater treated at the GTSA in violation of CWA permit under 33 U.S.C. §1319(c)(2)(A)

Only Evans Sr. is charged in Count 7 and, he argues that this Count charges conduct that occurred outside the applicable statute of limitations, i.e., the alleged conduct occurred between September 2011 and June 2015. Evans Sr. contends that "the Government's theory of criminal liability runs afoul of the applicable limitations period on the face of the Superseding Indictment" since Count 7 alleges that, in violation of 33 U.S.C. §1319 (c)(2)(A), "[o]n or about June 8, 2015 . . . . Bruce Evans Sr. did knowingly violate a condition of the GTSA's Clean Water Act NPDES Permit [], by failing to notify PADEP as soon as he was aware that the GTSA had submitted incorrect information in a permit application dated May 28, 2013, concerning the amount of gallons of 'gray water' hauled to the GTSA

22

wastewater treatment plant for treatment and failing to provide correct information in subsequent years." (Doc. 62 at ¶ 87).

"The purpose of a statute of limitations is to limit exposure to criminal prosecution following an illegal act." U.S. v. Smith, 373 F.3d 561, 563 (4th Cir. 2004) (citing Toussie v. United States, 397 U.S. 112, 114, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970)). "A statute of limitations protects individuals from having to defend against charges 'when the basic facts may have become obscured by the passage of time,' and minimizes 'the danger of official punishment because of acts in the far-distant past.'" *Id*. (citation omitted).

Additionally, "[s]tatutes of limitations should not be extended 'except as otherwise expressly provided by law.'" *Id*. (citations omitted). "Normally, the statute of limitations will begin to run when a single criminal act is complete." *Id.* "Criminal acts over an extended period, however, may be treated as a 'continuing offense' for limitations purposes when a criminal statute explicitly compels that result, or if 'the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one.'" *Id.* at 563-64 (citation omitted).

No doubt that the statute of limitations for the offense charged in Count 7 is five years. *See* 18 U.S.C. §3282 (five-year statute of limitations for all federal noncapital offenses). Here, the grand jury returned the original indictment on January 8, 2019, and any conduct occurring before January 8, 2014, would appear to be outside of the statute of limitations. As mentioned, "[s]tatutes of limitations generally begin to run when a crime is complete."

23

U.S. v. Salerno, 2011 WL 6141017, *4 (M.D. Pa. Dec. 9, 2011) (citation omitted). "Ordinarily, completion occurs at the moment the defendant's conduct satisfies every element of the offense." U.S. v. Green, 897 F.3d 443, 448 (2d Cir. 2018).

However, the government seemingly indicates that all of the conduct alleged in Count 7 is timely because it alleges a continuing offense regarding Evans Sr.'s repeated failure to notify the PADEP of the correct volume of hauled-in wastewater being treated by the GTSA. In particular, Count 7, at ¶¶ 86-87, alleges that Evans Sr. failed to notify the PADEP that he had reported inaccurate amounts of wastewater hauled to the GTSA in 2012 on the 2013 permit application and, that he failed to submit the correct information based on the volume discharged in 2013, 2014, and for the first half of 2015. It then specifically alleges that on June 8, 2015, Evans Sr. violated 33 U.S.C. §1319(c)(2)(A) by "failing to notify PADEP as soon as he was aware that the GTSA had submitted incorrect information in a permit application dated May 28, 2013, concerning the amount of gallons of gray water hauled to the GTSA wastewater treatment plant for treatment and failing to provide correct information in subsequent years."

Count 7 seemingly charges that the alleged offense was a continuing offense. "Where there is a continuing offense …, however, the limitations period begins to run at the end of the last act that was part of the offense." Salerno, 2011 WL 6141017, *4 (citing United States v. Amirnazmi, 645 F.3d 564, 592 (3d Cir. 2011)). See also Green, 897 F.3d at 448 ("Although all the

elements of the offense may already have been fulfilled, [a continuing] offense is understood to be complete only when the conduct has 'run its course.'"). "To determine whether a crime is a continuing offense, a court must look at 'the explicit language of the substantive criminal statute' as well as 'the nature of the crime involved.'" Salerno, 2011 WL 6141017, *4 (quoting Toussie, 397 U.S. at 115).

"The Supreme Court emphasized in *Toussie v. United States,* however, that "the doctrine of continuing offenses should be applied only in limited circumstances," based on "the principle that criminal limitations statutes are 'to be liberally interpreted in favor of repose.'" *Id.* (quoting United States v. Scharton, 285 U.S. 518, 522, 52 S.Ct. 416, 76 L.Ed. 917 (1932)). Further, a "single, instantaneous act" is not a continuing offense. *Id*.

The government maintains, (Doc. 93 at 22), in its response:

Count 7 sets forth the specific NPDES permit condition in question, and charges that Evans Sr. violated that requirement on a specific date within the applicable five-year statute of limitations [on or about June 8, 2015]. Superseding Indictment at ¶ 87. It will be up to the jury to determine if Evans Sr. knowingly violated that requirement, did so on or about the date charged in the Superseding Indictment, and whether that date fell within the statute of limitations.

Neither party cites to any case which has held that "the nature of the crime" makes a violation of a CWA permit under 33 U.S.C. §1319(c)(2)(A) a continuing offense, and the court has not found any such cases. In any event, the court finds that the alleged conduct by Evans Sr. in Count 7 was not a continuing offense for purposes of extending the statute of limitations,

25

and that he knew or should have known that the alleged amounts of hauled-in wastewater he reported to PADEP was not correct at the time he reported it. When Evans Sr. submitted his alleged inaccurate reports to PADEP regarding the amount of hauled-in wastewater the GTSA accepted, the statutes of limitations began to run since this is the time that his conduct satisfies every element of the CWA offense charged in Count 7.

Thus, all of the alleged conduct by Evans Sr. which occurred **before January 8, 2014** will be dismissed in Count 7 as time barred. The government will not be permitted to offer any evidence at trial regarding alleged acts by Evans Sr. stated in Count 7 regarding his failure to properly report the volume of hauled-in wastewater that was treated by the GTSA that occurred more than five years before the original indictment was filed, i.e., **before January 8, 2014**, since this conduct is out of time.

The court finds that all of the alleged conduct by Evans Sr. which occurred **after January 8, 2014** will not be dismissed as time barred in Count 7 since it alleges acts which were within five years of the date of the original indictment. Thus, the alleged charged conduct in Count 7 is, in part, outside of the applicable statute of limitations, and is, in part, within the statute of limitations. As such, Evans Sr.'s motion to dismiss Count 7 as time barred will be granted, in part, and denied, in part.

## IV.    CONCLUSION

Based on the foregoing, the motion to dismiss of defendant Evans Jr., **(Doc. 48)**, is **DENIED IN ITS ENTIRETY**. The motion to dismiss of defendant Evans Sr., **(Doc. 80)**, is **DENIED IN PART**, and **GRANTED IN PART**. Specifically, Counts 2-5 of the Superseding Indictment**, (Doc. 62), WILL PROCEED** against Evans Jr. and Evans Sr. Also, Count 1, **WILL PROCEED** against Evans Sr., and Count 7, **WILL PROCEED IN PART** against Evans Sr., i.e., as to all of the alleged conduct which occurred **after January 8, 2014**. All of the alleged conduct by Evans Sr. which occurred **before January 8, 2014** will be **DISMISSED** in Count 7 as time barred. An appropriate order will follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: August 19, 2021**
19-9-02

27