UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIM. NO. 3:CR-19-09 |
| | : | |
| v. | : | |
| | : | (JUDGE MANNION) |
| BRUCE EVANS, SR. and | : | |
| BRUCE EVANS, JR., | : | |
| DEFENDANTS | : | |

# UNITED STATES' BRIEF IN RESPONSE TO DEFENDANT'S MOTION TO PRECLUDE EXPERT TESTIMONY

COMES NOW, the United States of America, through undersigned counsel, and offers the below response in opposition to defendant Bruce Evans, Sr.'s motion to preclude expert testimony.[1]

Defendant Bruce Evans Sr. claims that he has reservations about the expert qualifications of Thomas Brown, Jeremy Miller, and Ed Gillette, and that the Court should prohibit them from testifying as expert witnesses and/or limit the scope of their testimony. The Court should deny this relief as premature. Designation of these witnesses as experts must await questioning of them about their qualifications.

---

[1] Although not specified, the United States assumes that Defendant Bruce Evans Jr. joins in the Motion.

1

Moreover, under Fed. R. of Evid. 704, the defendants will not be unduly prejudiced by testimony by these "hybrid" witnesses. The United States does not plan to ask any of them whether, in their opinion, the defendants committed a criminal offense under the Clean Water Act (CWA). Such offenses contain a "knowing" *means rea* requirement and it would be inappropriate to ask such witnesses about another person's *mens rea*.

The motivation behind the Motion is clear – Evans Sr. knows that these three witnesses will offer damaging testimony against him and Evans, Jr. and he wants to minimize their qualifications to the jury. It goes without question to say that regulatory witnesses such as Brown and Miller possess specialized knowledge and training – otherwise, they would not be inspecting facilities regulated by environmental statutes such as the CWA. You would not send an accountant to inspect a sewage treatment plant. These witnesses all meet the requirements set forth in Fed. R. of Evidence 702, and their testimony will certainly aid the jury in understanding the CWA, the relevant CWA permit provisions at issue, and how the conduct with which the defendants are

charged compares with those permit provisions.

The three witnesses at issue are well known to the defendants. As a prelude to their testimony, the United States offers the following information about them.[2] Mr. Brown worked for the PADEP for more than 30 years, was a wastewater treatment plant operator for eight years prior to joining PADEP, and taught other WWTP operators for many years prior to his retirement. He is well known to the Bruce Evans, Sr., having inspected the GTSA plant multiple times between 2013 and 2017. Mr. Miller was the PADEP inspector assigned to the plant for more than six years, and dealt personally with Bruce Evans Sr. on a regular basis. He also dealt with Bruce Evans Jr. after he purportedly became a licensed WWTP operator in 2017. Miller is a certified WWTP operator, as was Mr. Brown. Mr. Gillette, a P.E. in multiple states, has worked in wastewater treatment engineering since he graduated from Tufts University in 1969. The United States notes that his sewage treatment experience pre-dates enactment of the CWA

---

[2] The resumes of each of the three proposed Government experts have been disclosed to the defendants.

by three years, meaning he has worked in this field for 52 years. Moreover, the GTSA Board hired him in early 2018 to help straighten out the mess left by the defendants. He remains the GTSA plant engineer, but stopped being the certified WWTP operator of record last year. The Government attaches their resumes as "Exhibit A" to this memorandum.

Despite conceding that it is proper to permit such "hybrid" witnesses to testify about personal observations made in the course of their work and offering their expert opinions on certain subjects, defendant Evans Sr. argues that such testimony would be improper in this case. The Rules of Evidence do not prohibit such testimony, and it is regularly offered in environmental prosecutions to provide context to the jury and to discuss specific regulations and permits at issue. For example, in *United States v. Wilson,* 133 F.3d 251 (4th Cir. 1997), a CWA wetlands prosecution, the Fourth Circuit framed the issue posed by the defendant in very clear terms.

> In a case involving the application of complex regulations, like this one, it can be difficult for factual witnesses who are also the individuals responsible for enforcing the regulations to testify without at least referencing the legal framework

> which motivated and justified their activities. It can likewise by difficult for the trial court to preserve to itself the exclusive task of instructing the jury on the law while, at the same time, allowing expert witnesses to state their findings and to give their opinions on relevant questions."

*Id.* at 265.

In its ruling, the Fourth Circuit approved the district court's refusal to permit two former Assistant Attorneys General at the Department of Justice to testify for the defendants about the law. As for the Government expert witnesses, the Fourth Circuit noted that "those witnesses were also fact witnesses to the conditions of the property in question and expert witnesses as to techniques for identifying wetlands. As regulatory enforcers, their conclusions that a given property contained wetlands were based not purely upon the scientific notion of what a wetland is, but also upon the regulatory definition." *Id.* The Court approved such testimony, provided that trial courts limited such testimony by prohibiting such witnesses from testifying about "what the law means or how it is interpreted." *Id.* at 265-65.

The Third Circuit has also considered when regulatory witnesses may testify and about what subjects in non-environmental cases. In *United States v. Fumo*, 655 F.3d Cir. 288 (3d Cir. 2011), the Court rejected former Senator Fumo's contention that the district court had impermissibly allowed the Director of the State Ethics Commission to testify about the ethics. Fumo was on trial for public corruption and fraud. The Court noted that the Third Circuit had previously allowed experts to discuss business customs and practices, and that such testimony will sometimes include applicable legal regulations. *Id.* at 302 (*citing United States v. Leo*, 941 F.2d 181, 196 (3d Cir. 1991) and other cases).

With regard to the defendant Evans Sr.'s motion, the Fourth Circuit clearly appreciated the issues involved in so-called "hybrid" testimony and approved of it. The United States does not plan to ask any of the three witnesses "what the law means or how it is interpreted." It does plan to ask Brown and Miller to identify the CWA permit at issue, specific provisions in the permit that are relevant to the prosecution, and to state whether, in certain instances, the DEP

concluded that such acts had violated relevant CWA provisions and notified Evans Sr. of that determination. This kind of determination is made every day by DEP personnel based on field and other work, as exemplified by the inspection reports, Notices of Violation, and Field Orders that will be introduced into evidence. As for Gillette, the United States will not ask him about whether various acts violated permit provisions. However, he will testify as to his expert opinion concerning conditions at the GTSA plant when he took over as GTSA engineer and certified plant operator in January 2018, after the GTSA Board fired the defendants.

As the defendants note, asking these witnesses about *mens rea* is improper. The United States does not plan to ask any of these witnesses questions about the defendants' *mens rea*. That is an issue for the jury to decide. However, asking questions about the topics outlined above is not improper. In addition, the Government proposes that a jury instruction involving "Dual Role Testimony," as outlined in the Ninth Circuit Manual of Model Criminal Jury Instructions 4.15, could be appropriately given. *See* Exhibit "B".

## Conclusion

For the reasons stated above, the Court should deny defendant Bruce Evans Sr.'s Motion in Limine to Preclude Testimony of Expert Witnesses and/or to Limit Scope of Testimony.

    Respectfully submitted,

    BRUCE D. BRANDLER
    Acting United States Attorney

By:    /s/ Michelle L. Olshefski
    MICHELLE L. OLSHEFSKI
    Assistant U.S. Attorney

    /s/ W. Martin Harrell
    W. MARTIN HARRELL
    Special Assistant U.S. Attorney

    /s/ Patricia C. Miller
    PATRICIA C. MILLER
    Special Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 10th day of November, 2021, I caused the foregoing "**United States' Brief in Opposition to Defendant's Motion to Preclude Expert Testimony**" to be served upon Patrick Casey, Esquire, counsel of record for Evans Sr., and Bernard Brown, Esquire, counsel of record for Evans Jr. and that both Attorney Casey and Attorney Brown are filing users under the ECF system.

/s/ Michelle Olshefski
MICHELLE OLSHEFSKI
Assistant United States Attorney