**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **3:CR-19-09** |
| **v.** | : | **(JUDGE MANNION)** |
| **BRUCE EVANS, SR. and** | : | |
| **BRUCE EVANS, JR.,** | | |
| | : | |
| **Defendants** | | |

# M E M O R A N D U M

Presently before the court is the government's October 25, 2021 Notice of Expert Testimony regarding its intent to call 20 expert witnesses, broken down into two types of expert witnesses at trial, (Doc. 114), and the November 8, 2021 Motion *in Limine* of defendant Bruce Evans, Sr., ("defendant" or "Evans, Sr."), (Doc. 121), to preclude three of the government's proposed experts, namely, Thomas Brown, Jeremy Miller and Ed Gillette, from being qualified as experts pursuant to Federal Rule of Evidence 702. The government indicates that it will seek to qualify these three witnesses as wastewater treatment experts. Alternatively, if the court does not prevent the stated three witnesses from being qualified as experts, Evans, Sr. seeks the court to limit these alleged "hybrid" fact and expert witnesses under Federal Rule of Evidence 704(b) from testifying as to ultimate legal conclusions/*mens rea* of the crimes charged, and to take other precautions to limit any prejudice from their testimony. Defendant simultaneously filed his brief in

support of his motion. (Doc. 122). On November 10, 2021, the government filed its brief in opposition with attached Exhibits. (Doc. 129).

Evans, Sr.'s motion *in limine*, **(Doc. 121)**, will be **GRANTED IN PART**, and **DENIED IN PART**.

## I.   FACTUAL AND PROCEDURAL HISTORY[1]

On May 28, 2020, a Superseding Indictment was filed against defendants Bruce Evans, Sr., and his son, Bruce Evans, Jr. (Doc. 62). The Superseding Indictment contains 36 Counts, namely: (1) three counts under 33 U.S.C. §1319(c)(2)(A) for failure to operate and maintain in violation of a Clean Water Act permit; (2) two counts under 33 U.S.C. §1319(c)(2)(A) for discharge in violation of a Clean Water Act permit; (3) one count under 33 U.S.C. §1319(c)(2)(A) for failure to notify PA Department of Environmental Protection ("PADEP") in violation of CWA permit; (4) eight counts under 33 U.S.C. §1319(c)(2)(A) for bypassing the treatment system in violation of a CWA permit; (5) nine counts under 33 U.S.C. §1319(c)(2)(A) for failure to notify PADEP of bypasses and sewage overflows in violation of a CWA permit; (6) eight counts under 18 U.S.C. §1343 for wire fraud; (7) four counts under 18 U.S.C. §1702 obstruction of correspondence; and (8) one

---

[1]Since the court stated the factual background of this case in its August 19, 2021 Memorandum denying defendants' motions to dismiss, it is not fully repeated herein. (Doc. 104).

2

count of false statements in violation of the CWA under 33 U.S.C. §1319(c)(4). Evans Sr. is charged in 35 of the Counts (i.e., all Counts except for Count 6), while Evans Jr. is only charged in Counts 2-5 and 6. In Count 6, Evans Jr. is charged with false statements in violation of the CWA.

The trial in this case is scheduled to commence on November 15, 2021, as against both defendants.

## II.    LEGAL STANDARD FOR MOTION *IN LIMINE*

"The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." United States v. Tartaglione, 228 F.Supp.3d 402, 406 (E.D. Pa. 2017). On a motion *in limine*, evidence should only be excluded "when the evidence is clearly inadmissible on all potential grounds." *Id.* Evidentiary rulings on motions *in limine* are subject to the trial judge's discretion and are therefore reviewed for an abuse of discretion. Abrams v. Lightolier, Inc., 50 F.3d 1204, 1213 (3d Cir. 1995); Bernardsville Bd. of Educ. v. J.H., 42 F.3d 149, 161 (3d Cir. 1994). "The Court is vested with broad inherent authority to manage its cases, which carries with it the discretion and authority to rule on motions *in limine* prior to trial." Ridolfi v. State Farm Mutual Auto. Ins. Co., 2017 WL 3198006, *2 (M.D. Pa. July 27, 2017).

3

Further, "[c]ourts may exercise this discretion in order to ensure that juries are not exposed to unfairly prejudicial, confusing or irrelevant evidence." *Id.*

"A trial court considering a motion *in limine* may reserve judgment until trial in order to place the motion in the appropriate factual context." United States v. Tartaglione, 228 F.Supp.3d 402, 406 (E.D. Pa. 2017). "Further, a trial court's ruling on a motion *in limine* is 'subject to change when the case unfolds, particularly if actual testimony differs from what was contained in the movant's proffer.'" *Id.* (quoting Luce v. United States, 469 U.S. 38, 41, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984)).

## III.    DISCUSSION

Evans, Sr.'s motion *in limine* is filed pursuant to Federal Rule of Evidence 702. "It is well established that a district judge has a 'general 'gatekeeping' obligation' with respect to all testimony based on specialized knowledge of some form." U.S. v. Williams, 974 F.3d 320, 358 (3d Cir. 2020) (citing Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)). "Under Federal Rule of Evidence 702, [the judge] must ensure that such testimony is both reliable and relevant, including under the standard laid down in Rule 403." *Id.* (citing Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 594-95, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)). "The judge must also ensure that 'an expert

4

witness [does] not state an opinion about whether [a] defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense.'" *Id*. (citing Fed. R. Evid. 704(b)).

No doubt that the admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

"It is well-established that 'Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability, and fit.'" In re J&J Talcum Powder Litig., 509 F.Supp.3d 116, 130 (D. N.J. 2020) (citations omitted). "The Daubert Court ruled that trial courts must perform a gatekeeping function to ensure the relevance and reliability of expert testimony. *Id*. (citation omitted). "In conducting this analysis, courts are to consider 'all aspects of the expert's testing: the methodology, the facts underlying the expert's opinion, [and] the link between the facts and the conclusion." *Id*. at 131 (citations omitted). "Moreover, courts must ensure that expert testimony reflects accepted standards within the relevant scientific and

5

business communities." *Id*. (citing In re Johnson & Johnson Derivative Litig., 900 F. Supp. 2d 467, 492 (D. N.J. 2012) ("[T]he Court's role under Rule 702 is to ensure that expert testimony reflects accepted standards within the relevant scientific and business communities—it is not to serve as an umpire between competing subsets of a given community.")).

"The first prong of admissibility considers whether an expert is qualified 'to render an opinion when he or she possesses specialized expertise.'" *Id*. at 131 (citations omitted). "This factor is applied liberally and 'courts have been cautioned not to exclude expert testimony merely because the court feels that the expert is not the best qualified or that the expert does not possess the most appropriate specialization.'" *Id.* (citation omitted).

"The second prong of admissibility concerns the reliability of the expert's methodology", and "[t]he Third Circuit has explained that 'an expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable.'" *Id*. (internal citations omitted). Thus, an "expert's opinion must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation.'" *Id*. (citations omitted).

"The third prong of admissibility, fit, concerns whether the expert's testimony will be helpful to the trier of fact", and "[t]he Third Circuit has explained that 'admissibility depends in part on the proffered connection between the scientific

6

research or test result to be presented and particular disputed factual issues in the case.'" *Id*. at 132 (internal citations omitted).

As to its three wastewater treatment proffered expert witnesses, the government states, (Doc. 114 at 2-3), in relevant part, as follows:[2]

## **Brown**

Brown is a retired [PA]DEP employee who spent 41 years in the wastewater treatment profession. During his 31-year state career, he provided technical and regulatory compliance assistance to entities and individuals regulated by CWA NPDES permits and as a technical expert

---

[2]The court notes that since the government summarizes the background of the three experts at issue in its Notice, (Doc. 114 at 2-3), and has submitted their curricula vitae, ("CV's"), (Doc. 129-1), the court will not fully repeat their qualifications herein. (*See also* Doc. 129 at 3-4).

Evans, Sr. points out, (Doc. 122 at 4 n. 1), that the government failed to comply with Fed.R.Crim.P. 16(a)(1)(G) since it only provided defendants with its expert disclosures on October 25, 2021, less than one month before trial. He also contends that the government did not timely provide defendants with the CV's of its proposed expert witnesses with its Notice. In fact, the CV's were not provided until the government filed its instant brief, Doc. 129-1, on November 10, 2021, two business days before trial. As such, Evans, Sr. notes that he is not able to fully consider if the three experts at issue herein are qualified under FRE 702. "Federal Rule of Criminal Procedure 16 requires the government to give the defendant a 'written summary' of any expert testimony, at the defendant's request", but "[t]he required disclosure under Rule 16 is not an automatic obligation on the government; it arises only upon request of a defendant." U.S. v. Burton, 404 Fed.Appx. 617, 624, n.4 (3d Cir. 2010). Here, Evans, Sr. filed his Requests for expert disclosure as well as Rule 404(b) evidence on October 2, 2019, (Docs. 32 & 33), which were over two years before the government complied with the Requests.

As such, the court admonishes the government for its untimely compliance with the Rules and notes that the government's last minute Notices filed on October 18 and 25, 2021, including its Rule 404(b) Notice and Expert Testimony Notice, have required the defendants to file motions *in limine* one week before the trial which has put an undue burden on the court to decide these matters prior to trial.

supporting PADEP investigations involving regulated facilities with chronic violations or suspicious activity. Brown also spent 11 years as a wastewater treatment plant operator for Somerset, PA starting in 1977. He retired in 2019 from the PADEP. Mr. Brown was a certified wastewater treatment operator[.]

Brown will testify about the SBRs used at GTSA, his visits to the plant and discussions with the defendants, his observations concerning plant operation and maintenance, and CWA NPDES permit violations at the GTSA sewage treatment system.

## Miller

Miller has worked for the PADEP for 21 years, including 10 years in PADEP's water quality protection program. Mr. Miller was the assigned CWA NPDES compliance inspector for the GTSA plant during the time period covered in the Superseding Indictment during which he had responsibility for hundreds of facilities with NPDES permits. Miller conducted 534 inspections from January 1, 2012, to December 31, 2018. During that time, he had inspector responsibility for 201 NPDES permits, of which 102 involved wastewater. Upon Mr. Brown's retirement, Mr. Miller became the statewide Wastewater Operations Advisor in 2020, …

Miller will testify about terms of the GTSA NPDES permit, the SBR treatment system used by the GTSA, his inspections of the GTSA sewer system between 2012 and 2018, including pump stations, sampling he conducted on various dates at the plant, and CWA NPDES permit violations.

## Gillette

The GTSA hired Mr. Gillette as its Engineer and Wastewater Treatment Plant Operator in late 2017 and early 2018 to replace David Klepadlo in those positions. He has worked in the wastewater treatment industry for 51 years[.]

He had been a registered Professional Engineer in Pennsylvania since 1973, and is also a registered P.E. in 10 other states. Mr. Gillette has been a certified wastewater treatment operator in PA since 1975 and in New Jersey since 1981. He is a Diplomate of the American Academy of Environmental Engineers. He has published numerous articles on wastewater process control and plant operations, including safety and cost savings. Mr. Gillette

8

has taught courses on wastewater treatment plant operations for more than 40 years through the Commonwealth of PA, ….

Mr. Gillette will testify about the nature of his work in designing sewage treatment plants and troubleshooting problems at plants with issues, how he came to work at the GTSA, plant conditions at the GTSA when he was hired, his analysis of process wastewater controls and operation and maintenance of the plant, the plant's inability to meet its NPDES permit requirements when he took over, the lack of maintenance and upkeep of equipment, how solids would be discharged from the plant's outfall into the receiving stream due to lack of proper operation and maintenance, and offer his opinions about how the plant had been mismanaged.

Evans, Sr. argues that the three wastewater treatment experts will testify based on personal knowledge they gained as fact witnesses from their work involving the GTSA facility, as PADEP personnel and as the GTSA plant operator, and the processes used at GTSA. He states that these witnesses' qualifications as experts have no bearing on their factual testimony. He further contends that Brown, Miller and Gillette will simply be offering opinion testimony as lay witnesses who had firsthand knowledge of the operations at GTSA, and that they should be precluded from testifying as expert witnesses and from offering any opinions as experts since their proposed testimony does not meet the requirements of FRE 702.

The court has reviewed the CV's submitted, albeit untimely by the government, of the three proffered experts and finds that it appears, for present purposes, they are qualified as wastewater treatment experts. "To decide whether an expert is qualified, courts must assess whether the expert has specialized

9

knowledge in his testimony, which may be based in practical experience as well as academic training and credentials." Santanna v. Del. & Hudson Ry Co, Inc., 2014 WL 631615, *2 (M.D. Pa. Feb. 18, 2014) (citing Elcock v. Kmart Corp., 233 F.3d 734, 741 (3d Cir. 2000)). "The specialized knowledge requirement has been interpreted liberally in the substantive as well as the formal qualification of experts; 'at a minimum, a proffered expert witness ... must possess skill or knowledge greater than the average layman....'" Id. Additionally, the CV's of the three witnesses show that they appear to be qualified by training, education and practical experience, and that they possess greater skill or knowledge than the average layman regarding wastewater treatment. The proffered testimony of these three witnesses also would aid the jury in understanding the CWA and its regulations as well as the NPDES permit requirements. In any event, the court will ultimately make this decision at trial when the witnesses are proffered as experts.[3]

As such, the determination by the court as to whether Brown, Miller, and Gillette qualify as experts and whether the court should preclude them from rendering any expert opinion or limit the scope of their testimony under FRE 702, is premature and defendant's motion *in limine* will be denied in this respect.

_____

[3]At trial, after the government proffers the three witnesses as experts defendants will be able to cross examine them on their qualifications and background before they are allowed to testify as experts.

Next, no doubt that "Federal Rule of Evidence 704(a) bars [an expert witness] from providing an opinion as to the ultimate issue in the case", and "[a]n expert's opinion on a question of law is not admissible." Wood v. Showers, 2019 WL 5847836, *1 (M.D. Pa. Aug. 6, 2019) (internal quotations and citations omitted). Nonetheless, "Rule 704(a) contemplates admissibility of an expert opinion on an element of the offense, stating "an opinion is not objectionable just because it embraces an ultimate issue," however, "the Court has the responsibility to filter, …, opinions which would merely tell the jury what result to reach." Id. (citations omitted). See also U.S. v. Watson, 260 F.3d 301, 308-09 (3d Cir. 2001) ("Under Fed. R. Evid. 704(b), no expert witness 'testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone."). Also, "[t]he prosecutor may not elicit expert testimony on the ultimate issue of fact; that is for the jury alone to decide." Id. Moreover, "[e]xpert testimony is admissible if it merely 'support[s] an inference or conclusion that the defendant did or did not have the requisite mens rea, so long as the expert does not draw the ultimate inference or conclusion for the jury and the ultimate inference or conclusion does not necessarily follow from the testimony." Id. (citations omitted). However, "Rule 704(b) may be violated when

11

the prosecutor's question is plainly designed to elicit the expert's testimony about the mental state of the defendant, or when the expert triggers the application of Rule 704(b) by directly referring to the defendant's intent, mental state, or *mens rea*." *Id*. (internal citations omitted).

Nor can expert witnesses testify about what the meaning of the law or interpret the law for the jury. Indeed, the court will instruct the jury on what the relevant law is in this case. In fact, the government indicates that "[it] does not plan to ask any of the three witnesses 'what the law means or how it is interpreted.'" (Doc. 129 at 6).

Additionally, the government represents that "[it] does not plan to ask any of [the three witnesses] whether, in their opinion, the defendants committed a criminal offense under the Clean Water Act …. Such offenses contain a 'knowing' [*mens*] *rea* requirement and it would be inappropriate to ask such witnesses about another person's *mens rea*." (Doc. 129 at 2). However, the government indicates that it "does plan to ask Brown and Miller to identify the CWA permit at issue, specific provisions in the permit that are relevant to the prosecution, and to state whether, in certain instances, the [PA]DEP concluded that such acts had violated relevant CWA provisions and notified Evans Sr. of that determination." (Id. at 6-7). The government states that it will not ask Gillette about whether various acts violated the CWA permit provisions, but it will ask him about "his expert opinion

concerning conditions at the GTSA plant when he took over as GTSA engineer and certified plant operator in January 2018, after the GTSA Board fired the defendants." (Id. at 7).

No doubt that the three proposed experts are hybrid fact/expert witnesses and will be asked to testify about facts based on their own personal knowledge of the GTSA operations due to their prior positions and what they personally witnessed and observed firsthand at GTSA as well as to give expert opinions about the plant operations based on their training and background which qualify as FRE 702 testimony. *See* Walker v. Mankey, 2019 WL 7495001 (W.D. Pa. Jan. 7, 2019); *see also* Teen-Ed, Inc. v. Kimball Int'l, Inc., 620 F.2d 399, 404 (3d Cir. 1980) ("The essential difference between opinion evidence which is not that of expert witness and opinion evidence by qualified expert is that latter may answer hypothetical questions and thus testify not only from the facts or data perceived by him but also from what is made known to him at or before hearing.").

Here, to the extent that Evans, Sr. seeks to preclude the three witnesses from testifying beyond the scope of the facts they learned from their personal knowledge and that they gained firsthand, his motion will be denied. If the witnesses are qualified at trial as experts in wastewater treatment, they may testify in the form of an opinion based on their specialized knowledge and expertise pursuant to FRE 702.

13

However, the court will grant Evans, Sr.'s motion to the extent that it seeks to preclude the government from asking Brown, Miller and Gillette any questions about either of the defendant's *mens rea*, since this is an issue for the jury to decide.[4]

## IV.  CONCLUSION

For the aforementioned reasons, the defendant Evans Sr.'s motion *in limine* to preclude three of the government's proposed experts, namely, Thomas Brown, Jeremy Miller and Ed Gillette, from being qualified as experts pursuant to Federal Rule of Evidence 702, **(Doc. 121)**, will be **GRANTED IN PART** and **DENIED IN PART**, as specified above. An appropriate Order follows.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Court**

**Dated: November 12, 2021**
19-09-05

---

[4]The court concurs with the government's proposed jury instruction involving "Dual Role Testimony," found in the Ninth Circuit Manual of Model Criminal Jury Instructions 4.15, and it will be given to the jury before their testimony if Brown, Miller and Gillette are qualified as experts. (*See* Doc. 129-2). Such an instruction will be given as a precaution to limit any prejudice to the defendants from their testimony.

14